UNITED STATES of America,
Plaintiff-Appellee,

v.

Humberto NICHOLAS–ARMENTA,
Defendant-Appellant.

No. 84–5151.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 2, 1985.

Decided June 20, 1985.

David Nimmer, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

John P. Gyorgy, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Before GOODWIN, SNEED and SKOPIL, Circuit Judges.

GOODWIN, Circuit Judge.

Humberto Nicholas-Armenta appeals his conviction for entering the United States after deportation in violation of 8 U.S.C. § 1326. Having no other defense, he collaterally attacks the underlying deportation, contending that he was denied due process on the occasion of the particular deportation cited in the indictment. We affirm.

Nicholas-Armenta was deported immediately after a deportation hearing in August 1981 and apparently reentered the United States in October 1981. On May 1, 1984, he was convicted of entering the United States after deportation in violation of 8 U.S.C. § 1326.[1]

The district court found that Nicholas-Armenta had waived his right to an individual deportation hearing and that he had suffered no prejudice by not being afforded such a hearing. On appeal, Nicholas-Ar-

---

1. 8 U.S.C. § 1326 states in relevant part:
   Any alien who—
   (1) has been arrested and deported or excluded and deported, and thereafter
   (2) enters, attempts to enter, or is at any time found in, the United States, ...

shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

menta asserts that a 33-person deportation hearing violates due process as a matter of law. His argument is based on this court's opinion in *United States v. Calles-Pineda*, 627 F.2d 976, 977 (9th Cir.1980).

### Collateral Attack Rule

■ This circuit allows an alien charged with illegal reentry after deportation in violation of 8 U.S.C. § 1326 to challenge collaterally in the criminal case the legality of the deportation. *United States v. Rangel-Gonzales*, 617 F.2d 529, 530 (9th Cir. 1980); *United States v. Calderon-Medina*, 591 F.2d 529, 530 (9th Cir.1979); *United States v. Barraza-Leon*, 575 F.2d 218, 220 (9th Cir.1978). The government contends that the Supreme Court's decision in *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), requires this circuit to change its position on collateral attacks. This is a question we have declined to reach before. *United States v. Alderete-Deras*, 743 F.2d 645, 648 n. 2 (9th Cir.1984).

In *Lewis* the Court held that a felony conviction could not be challenged collaterally in a later prosecution under 18 U.S.C.App. § 1202(a)(1), which prohibits a convicted felon from possessing a firearm. *Id.* 445 U.S. at 65, 100 S.Ct. at 920. The *Lewis* case does not affect this circuit's long-standing rule that *legal* deportation is an element of § 1326. See *United States v. Gasca-Kraft*, 522 F.2d 149, 152 (9th Cir. 1975). The *Lewis* holding is limited to the interpretation of a specific statute—§ 1201 (a)(1) of the Omnibus Crime Control and Safe Streets Act of 1968. It was the Court's analysis of the particular statutory provisions of that Act that led it to preclude collateral attacks in felon-firearm possession cases. *Lewis*, 445 U.S. at 60–64, 100 S.Ct. at 918–920. *See also Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 111–12, 103 S.Ct. 986, 990–991, 74 L.Ed.2d 845 (1983) (*Lewis* preclusion of collateral attacks based on Congress' intent to keep guns out of the hands of dangerous persons).

The Supreme Court's opinion in *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), decided after *Lewis*, also suggests that the *Lewis* holding is limited to § 1202(a)(1) prosecutions and does not preclude attacks predicated in other contexts. In *Baldasar* the Court held that a defendant can collaterally attack a misdemeanor conviction used to convert a subsequent misdemeanor into a felony. *Id.* at 223–24, 100 S.Ct. at 1585–1586.

There is a strong argument for continuing to allow collateral attacks on deportation orders that form the basis of a criminal conviction. Criminal convictions are the result of a proceeding with all the constitutional safeguards. Respondents in a civil deportation hearing, however, are not entitled to the same constitutional rights afforded a criminal defendant. *See, e.g., INS v. Lopez-Mendoza*, — U.S. —, 104 S.Ct. 3479, 3490, 82 L.Ed.2d 778 (1984) (exclusionary rule does not apply to a deportation proceeding); *Ramirez v. INS*, 550 F.2d 560, 563 (9th Cir.1977) (no Sixth Amendment right to appointed counsel in deportation proceedings); *Trias-Hernandez v. INS*, 528 F.2d 366, 368–69 (9th Cir. 1975) (failure to give *Miranda* warnings does not preclude use of alien's statements in a deportation hearing); *Bilokumsky v. Tod*, 263 U.S. 149, 154, 44 S.Ct. 54, 56, 68 L.Ed. 221 (1923) (Fifth Amendment refusal to testify may form the basis of inferences against alien in the deportation hearing). Therefore, before imposing a § 1326 felony conviction which carries a prison sentence, the district court should be able to review the legality of an underlying deportation order obtained without the benefit of the same constitutional protection that is extended to criminal defendants. *Lewis* does not preclude collateral attacks in this context.

### Due Process

■ Although deportation proceedings do not require a full panoply of constitutional safeguards, they must conform to due process. Aliens are entitled to a full and fair hearing before being deported. *Tejeda-Mata v. INS*, 626 F.2d 721, 726 (9th Cir.1980), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982); *Ramirez*, 550 F.2d at 563.

In *Calles-Pineda,* 627 F.2d 976, the defendant challenged the deportation proceedings underlying his § 1326 indictment on grounds that they involved as many as 29 respondents in mass hearings. This court upheld that conviction, but stated:

> We agree that mass deportation hearings must have an outer limit. That limit has been reached in these cases. We would not expect a panel of this court to approve mass hearings any larger than those conducted in these cases. We are unwilling, however, to draw the line to exclude these cases without prior warning and in the absence of any suggestion by Calles-Pineda that he was prejudiced in fact by the procedures employed.

*Id.* at 977.

The holding of *Calles-Pineda* was a continuation of the rule that due process challenges require a showing of prejudice. *See United States v. Barraza-Leon,* 575 F.2d at 220–21 (due process collateral attack on deportation hearing with eight respondents unsuccessful because no showing of prejudice). The "outer limits" language in *Calles-Pineda* was a valid expression of concern that the Immigration Service's practice of "processing" large numbers of illegal aliens was likely to slight due process in the interest of efficiency and economy. We, of course, share that concern. It is clear, however, that under *Calles-Pineda,* reaching the outer limit is not simply a function of how many or how few people are involved, but also whether the number results in prejudice to individuals. *Calles-Pineda* did not create a per se rule that a particular number of persons at a deportation hearing is unacceptable.

██ In this case, due process was protected by the painstaking efforts of the immigration judge to provide a full and fair hearing. *See Tejeda-Mata,* 626 F.2d at 726. The transcript of the hearing shows that (1) Nicholas-Armenta was the thirty-third respondent; (2) it was conducted through an interpreter; and (3) the entire hearing lasted only an hour and twenty-five minutes, including time for translation. Despite these disadvantages, however, the transcript reflects the judge's careful and, where necessary, particularized, inquiries of each of the 33 persons before him, and his sensitivity to the potential for linguistic and other confusion on the part of those facing deportation.

Nicholas-Armenta is a demonstratably deportable alien whose only claim is that a group hearing is unconstitutional per se. He does not make a factual challenge to the trial court's finding that he waived an individualized hearing after one was offered to each member of the group. He does not claim that he had a defense to the 1981 deportation. Most important, he does not profess, and the record does not show, actual prejudice.

We leave to another court, to which a deported alien tenders a claim of prejudice, the task of deciding what the actual effect of a mass deportation hearing may be upon the due process rights of an alien when prejudice is asserted. We join the *Calles-Pineda* panel in expressing disapproval of the Immigration and Naturalization Service's persistence in creating an obvious threat to due process by holding deportation hearings for ever larger numbers of people. This court will take a hard look at the prejudicial effect of such a practice in any case in which prejudice is alleged.

Affirmed.