**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Raul ORTIZ–RIVERA, Defendant–
Appellant.**

**No. 92–50469.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1993.

Submission Vacated April 12, 1993.

Resubmitted June 29, 1993.

Decided July 26, 1993.

Humberto Diaz, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Michael Terrell, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: SCHROEDER, THOMPSON, and O'SCANNLAIN, Circuit Judges.

PER CURIAM:

Ortiz–Rivera was charged with being a deported alien found in the United States, in violation of 8 U.S.C. § 1326. He moved to dismiss the indictment on the ground that his earlier deportation hearing did not comply with due process of law. After a hearing, the district court upheld the indictment. Ortiz–Rivera then entered a conditional guilty plea, and filed this appeal.

I

In his guilty plea, Ortiz–Rivera stipulated to the following facts:

Defendant Raul Ortiz–Rivera ("defendant") was born on April 16, 1966, in Mexico. On November 4, 1987, and again on December 11, 1989, defendant was officially deported from the United States to Mexico at the Port of Entry located at Otay Mesa, California.

On June 12, 1984, defendant was convicted in the Superior Court of California for robbery with a weapon, in violation of Section 211 of the California Penal Code, and

he was sentenced to four years incarceration. On April 25, 1989, defendant was convicted in the Superior Court of California of the sale or transportation of cocaine, in violation of Section 11351 of the California Health and Safety Code, and he was sentenced to two years incarceration. In addition, on January 23, 1991, defendant was convicted in the Superior Court of California for unlawful driving or taking of a vehicle in violation of Section 10851(a) of the California Penal Code, and he was sentenced to two years incarceration.

On or about June 20, 1991, defendant was interviewed by an agent of the Immigration and Naturalization Service ("INS") at the Chino State Prison. During the interview, defendant admitted that he was born in Mexico, and had last entered the United States at the Port of Entry at Calexico, California, by falsely claiming U.S. citizenship on an unknown date in 1990. Defendant never obtained permission from the Attorney General of the United States to reapply for admission into the United States following deportation.

On February 20, 1992, defendant was released from state custody and placed into the custody of the INS. On that date, defendant was interviewed again by an INS agent. After waiving his constitutional rights, defendant admitted (and signed a statement) that he had been deported on two prior occasions, and that he illegally re-entered the United States three times, most recently in 1990.

## II

■ Ortiz–Rivera relies on our decision in *United States v. Proa–Tovar*, 975 F.2d 592 (9th Cir.1992) (en banc), to support his contention that his 1989 deportation cannot be made the basis of criminal penalties for re-entering this country. In *Proa–Tovar*, we recognized that, under the Supreme Court's decision in *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." *Proa–Tovar*, 975 F.2d at 594 (quoting *Mendoza–Lopez*, 481 U.S. at 838, 107 S.Ct. at 2155). Accordingly, we must permit Ortiz–Rivera to mount a collateral attack on the constitutionality of his prior deportation proceeding in this appeal if it appears that he was improperly deprived of his right to direct review of that proceeding. *Id.* at 595.

■ To succeed in such an attack, Ortiz–Rivera must demonstrate that his deportation hearing was fundamentally unfair. In present context, this means that he "must ... demonstrate deprivation of the right to a direct appeal from [the deportation] order, ... [and must] also ... prov[e] prejudice" from that deprivation. *Id.*

## III

The transcript of the 1989 deportation hearing challenged by Ortiz–Rivera, as designated in his excerpt of record on appeal, reads as follows:

### PROCEEDINGS BEGIN

(Court is called to Order)

(Interpreter is Present)

(* Indicates response in English by respondent)

THE COURT: The record may reflect that this is John Williams presiding at a hearing in deportation proceedings on November 21, 1989, at the Richard J. Donovan Detention in a matter relating to the following named seven respondents.

Raul Ortiz–Rivera A 27919472, Martin Arguis–Assaunta A28799539, Jose Dimingos–Apata Robles A 29189649, Jose Guzman–Gonzalez A 27692729, Arnardo De Jesus Goma A24919744, Juan Corona–Lopez A 28964793 and Rigo Burto Dominguez–Arita A29163864.

The hearing this is in English translated into Spanish by Ms. Robles, the staff person in charge of the calendar and the official interpreter. Michael Yee, Y–E–E, Esquire is representing the United States.

Gentleman [sic], the immigration service has filed a charge against each of you

claiming that you are deportable as aliens who either entered the United States illegally without documents and without inspection or as aliens who have been convicted of a crime in the United States.

Do you understand the immigration charge that is filed against you personally?

THE INTERPRETER: By all respondents, yes.

THE COURT: The purpose of the hearing is to decide if the accusation against you is true and to give you a full and a fair opportunity to present your defense. If the accusation against you is not true I will dismiss the immigration charge. Moreover, the Government has the burden of showing that it is true if you dispute the charge—if you challenge or dispute the charge. Do you understand?

THE INTERPRETER: By all respondents, yes.

THE COURT: Now you can plead innocent or guilty to being deportable as you are charged. But before you make any admissions against your interests let me explain the following to you. You have a right to be represented at every stage of this hearing by an attorney or by some other qualified person of your own choice.

In addition, if you want a lawyer but you don't have money, I will postpone your hearing to a later date and I will work with you to see that you do get a lawyer to represent you.

If you believe that you have a legal right to be in the United States it would be best if you had a lawyer to represent you because the immigration laws are very technical and they are very hard to understand. Now, do you understand that you do have a right to a lawyer at this hearing?

THE INTERPRETER: By all respondents, yes.

THE COURT: If you want a lawyer to represent you please stand and then I will make those arrangements for you.

The record may reflect that none of the respondents are standing.

Let me quickly explain to you the other rights that you have at this hearing. You have the right to examine and object to evidence that is presented against you. If any witnesses should testify against you you can ask some questions and I shall help you. You also have a right at this hearing to present a defense to this charge.

If the accusation against you is not true I want you to tell me so. And then we will have the Government present evidence that the accusation is true. In addition, if you believe that you have a legal right to be in the United States I encourage you to explain the basis for your claim.

And finally, if you are not satisfied with the decision that I make you can take an appeal to a higher court and the higher court would review the record and make its own decision.

Do you understand these rights that I have tried to explain to you?

THE INTERPRETER: By all respondents, yes.

THE COURT: Gentleman [sic], I am going to mark the charges that are filed against you as Exhibits 1 through 7 in evidence.

(Plaintiff's Exhibit 1 through 7 are Marked)

THE COURT: The charge is the paper that you received a copy of from the immigration agent. It explains on this paper why the immigration agent believes that you are subject to deportation. Because this is simply the officer's accusation and it may not be entirely correct I would like to go over these items with each of you individually. I shall therefore call your names one at a time. When your name is called please come up and sit in the orange chair closest to the microphone.

After you come up here I shall ask you again if you want a free lawyer to represent you. If you do I shall give you a new trial date and I shall work with you to see that you are represented by a lawyer.

And if they want a lawyer to represent them I will give them a new trial date and work with them to see that they are represented.

On the other hand, if you tell me you don't want a lawyer we will go on with

your hearing. In this event I shall ask you if you understand this immigration charge. I shall then ask you to plead innocent or guilty to being deportable on that charge. I shall then give you an opportunity to present a defense, make a statement and to make a showing that you are not deportable, if you wish to do so.

Do you understand what I am going to do?

THE INTERPRETER: By all respondents, yes.

THE COURT: All right. Mr. Ortiz would you come up first please?

Do you speak English, Mr. Ortiz?

RESPONDENT ORTIZ–RIVERA: *Yes.

THE COURT: Would you speak to me in English?

RESPONDENT ORTIZ–RIVERA: *Yes.

THE COURT: All right sir. And is your full name Raul Ortiz–Rivera?

RESPONDENT ORTIZ–RIVERA: *Yes.

THE COURT: Do you want a free lawyer to represent you, Mr. Ortiz?

RESPONDENT ORTIZ–RIVERA: *No.

THE COURT: Do you understand that you are being charged with being deportable as an alien who was convicted of a cocaine violation?

RESPONDENT ORTIZ–RIVERA: *Yes.

THE COURT: How do you plead to that deportation charge?

RESPONDENT ORTIZ–RIVERA: *Guilty.

THE COURT: Are you a United States Citizen?

RESPONDENT ORTIZ–RIVERA: *No.

THE COURT: Were you born in Mexico?

RESPONDENT ORTIZ–RIVERA: *Yes.

THE COURT: Did you enter the United States without being inspected and without documents in May of 1988?

RESPONDENT ORTIZ–RIVERA: *Yes.

THE COURT: Were you convicted during April of 1989 in Los Angeles for the cocaine offense?

RESPONDENT ORTIZ–RIVERA: *Yes.

THE COURT: Now, you speak English well. Have you lived here for a long time?

RESPONDENT ORTIZ–RIVERA: *Yes.

THE COURT: All your life?

RESPONDENT ORTIZ–RIVERA: *Most of it.

THE COURT: Have you ever had any legal papers?

RESPONDENT ORTIZ–RIVERA: *No.

THE COURT: You've never been immigrated with your mother and father and so forth?

RESPONDENT ORTIZ–RIVERA: *No.

THE COURT: Did they get visas? Did your mother and dad—

RESPONDENT ORTIZ–RIVERA: *No.

THE COURT: Do you know why?

RESPONDENT ORTIZ–RIVERA: *I was in trouble.

THE COURT: I asked you the question because if you've lived here for many years and you are an immigrant than [sic] you have a right to make an application for a waiver. And you are sure you have never immigrated then? You've never had any legal immigration papers?

RESPONDENT ORTIZ–RIVERA: *No.

THE COURT: Do you believe that you have a legal right to be in this country?

RESPONDENT ORTIZ–RIVERA: *No.

THE COURT: If you do make the argument, I may not agree with you but I would like to hear what you have to say. Is there any argument at all?

RESPONDENT ORTIZ–RIVERA: *No.

THE COURT: Okay. Thank you very much Mr. Ortiz. Good luck sir.

(Whereupon the Court Questions Other Respondents)

THE COURT: Gentleman [sic], based on what you've told me and your concession that you are deportable, I will now sign an order for your deportations. And this means that as soon as you complete your time here the immigration service will arrange for your transportation back to your country.

I wanted to mention again to you that if you are not satisfied with the decision you have a right to take an appeal to a higher court. If you wish to appeal please stand and then I will explain the appeal process in more detail and have someone help you fill out the appeal application.

The record may reflect that none of the respondents is standing.

Mr. Yee?

MR. YEE: The service waives appeal.

THE COURT: All right. Gentleman [sic], good luck. We hope everything works out well for you. The hearing is closed.

PROCEEDINGS CONCLUDED

\*      \*      \*      \*      \*      \*

IV

Our recent decision in *United States v. Lopez–Vasquez*, 1 F.3d 751 (9th Cir.1993) (per curiam), compels the conclusion that Ortiz–Rivera was deprived of his right of direct appeal from his deportation proceeding, and must therefore be allowed to mount a collateral challenge against that proceeding here.

Like this case, *Lopez–Vasquez* was an appeal from a conviction under 8 U.S.C. § 1326. Lopez–Vasquez argued that the record of his underlying group deportation hearing did not show a knowing and intelligent waiver of his right to appeal. The record revealed that Lopez–Vasquez had not been individually questioned as to whether he wished to appeal the determination that he was deportable, and had not personally stated that he did not wish to appeal. Rather, the immigration judge had asked the respondents as a group whether they wanted to appeal, inviting anyone who did to stand up. The record showed that all of the respondents, including Lopez–Vasquez, had remained seated.

■ In *Lopez–Vasquez*, we characterized this procedure as "mass waiver by silence," and held that such a procedure "made it impossible to determine whether [Lopez–Vasquez] made a voluntary and intelligent decision to" waive his right to appeal. *Id.* at 754. We are not at liberty to disregard this holding. Although the facts of this case are in some respects quite different from those in *Lopez–Vasquez*, our holding there makes all of these differences irrelevant. Under *Lopez–Vasquez*, it is impossible for us to say that Ortiz–Rivera knowingly and intelligently waived that right. We must therefore entertain his collateral challenge to the constitutionality of the deportation proceeding.

V

■ Since we have already concluded that Ortiz–Rivera was improperly deprived of his right to appeal, the only remaining question is whether he was prejudiced by that deprivation, such that the prior proceeding must be deemed fundamentally unfair. Again, *Lopez–Vasquez* controls our decision. That case, like this one, was litigated in the district court during the interregnum between the original panel decision in *Proa–Tovar* and our subsequent en banc decision in the same case. The panel decision had held that a section 1326 defendant need not show actual prejudice from a defective waiver of appeal in order to succeed in a collateral attack on the underlying deportation order. Relying on that decision, as he was entitled to do, Lopez–Vasquez made no effort to introduce any evidence of prejudice in the district court. By the time his case reached this court, of course, the law of this circuit had changed. Under our superseding en banc decision in *Proa–Tovar*, a showing of prejudice is required. Thus, recognizing that because our law had changed during the pendency of his appeal, "neither Lopez–Vasquez nor the district court considered the question of prejudice," we held that he was entitled to a remand in order to make whatever showing

he chose on the question of prejudice. *Lopez–Vasquez*, 1 F.3d at 763.

The narrow circumstances that justified remand in *Lopez–Vasquez* mandate a similar result here. Accordingly, we remand to the district court in order to permit Ortiz–Rivera to introduce evidence of prejudice from the invalid waiver of his right to appeal his deportation order.

REVERSED and REMANDED.