UNITED STATES of America,
Plaintiff–Appellee,

v.

Arturo LOPEZ–VASQUEZ,
Defendant–Appellant.

No. 92–50271.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1993.

Decided Feb. 8, 1993.

As Amended on Denial of Rehearing and Rehearing En Banc June 30, 1993.

Dissenting Opinion from Order of Denial of Rehearing En Banc of Circuit Judge O'Scannlain Aug. 10, 1993.

John Lanahan, Federal Defenders of San Diego, Inc., San Diego, CA, for defendant-appellant.

Sherri L. Walker and Jay Alvarez, Asst. U.S. Attys., San Diego, CA, for plaintiff-appellee.

Before: BROWNING, POOLE and NOONAN, Circuit Judges.

## ORDER

The opinion in *United States v. Lopez–Vasquez*, No. 92–50271, slip op. 1043 (9th Cir. Feb. 8, 1993) is amended as follows:

[Editor's Note: Amendments have been incorporated into published opinion.]

With these amendments the panel has voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc.

The full court was advised of the suggestion for en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed.R.App.P. 35.

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

## OPINION

PER CURIAM:

### I.

Arturo Lopez–Vasquez was deported May 3, 1991. On August 28, 1991, he attempted to enter the United States from Mexico through a border patrol checkpoint. He told border patrol agents he was a United States citizen but had no identification because his wallet had been stolen. Lopez–Vasquez consented to a search of his bag and agents found a card with the name "Arturo Vasquez." A computer search under that name revealed an extensive criminal history and prior deportations, including the deportation of May 3. Lopez–Vasquez was arrested and indicted for reentry after deportation in violation of 8 U.S.C. § 1326. In a pretrial motion, Lopez–Vasquez contended his May 3 deportation could not serve as the basis for a conviction under § 1326 because his waiver of his right to appeal the deportation order was not knowing and intelligent. The court denied the motion. Lopez–Vasquez entered a conditional plea of guilty, preserving his right to appeal the denial of his motion.

### II.

A claim that a defect in a prior deportation order precludes reliance on the deportation in a prosecution for violation of 8 U.S.C. § 1326 presents "mixed questions of law and fact requiring us to exercise judgment about legal principles. Accordingly, we review [Lopez–Vasquez's] claims *de novo.*" *United States v. Proa–Tovar*, 975 F.2d 592, 594 (9th Cir.1992) (en banc).

### A.

Lopez–Vasquez was deported from the United States on May 3, 1991 after a group hearing with at least eleven other aliens. Although the immigration judge spoke to Lopez–Vasquez through an interpreter, he did not ask him, or any other member of the group, personally whether he wished to appeal his deportation.[1] Instead, he addressed them as a group:

A: No.
. . . .
Q: Mr. Lopez, did you enter without inspection January 9 of this year?

---

1. The total exchange between Lopez–Vasquez and the immigration judge follows:
   Q: Mr. Lopez, do you want to get the free lawyer?

THE COURT: Please answer together gentlemen, do you all understand the decision in your case?

ANSWER: Yeah!

THE COURT: [If] you accept the decision now, it is final and you will be deported to Mexico tonight. But you do not have to accept deportation. If you think it is wrong or unjust in your case for any reason, you can appeal the case to the higher court. Appeal is the legal way of saying to send the case to the higher court for study and review. Now all of you should have in your possession the Spanish language form I–648A. Regardless of the [inaudible] If you do not have a form please stand now. Let the record show that no one is standing.

Gentlemen, this appeal [form] explains about appeal like I am doing. And [inaudible] to make an appeal that cost money, but forget about that if you have no money; you can file the appeal free of charge. I [will] give you help with the paper work. Even if you do not know at this time if you want to appeal, the law says that you can reserve your right to appeal for the next 10 days and think about it.

Gentlemen, if any of you do not understand about appeal, or if you have any questions about appeal, please stand now so that I can talk to you. Let the record show that no one is standing. If any of you want to appeal your case to the higher court, or if you want to reserve your right to appeal for 10 days and think about it,
please stand so that I can talk to you about that. Again, let the record reflect that no one is standing.

.... There's no appeal and so the decision [inaudible] is final. I am going to give you and the immigration service attorney a copy of the decision. And I do wish all of you good luck for the future. The hearing for you is finished.

### B.

■ Due process requires that, "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding. This principle means at the very least that where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before an administrative order may be used to establish conclusively an element of a criminal offense." *United States v. Mendoza–Lopez*, 481 U.S. 828, 837–38, 107 S.Ct. 2148, 2154–55, 95 L.Ed.2d 772 (1987) (citations omitted) (emphasis in original); *see also Yakus v. United States*, 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834 (1944). Although a deportee may waive his right to judicial review of his deportation order, that waiver must be "considered and intelligent." *Id.* Otherwise, the deportee is deprived of judicial review in

[no answer indicated]

Q: Sir, you are charged with entering the country without inspection, do you understand this charge?

[no answer indicated]

Q: Is this charge true in your case?

[no answer indicated]

Q: The second charge of deportability is this drug charge. I want to ask you on October 2, 1989, were you convicted in Superior Court in Los Angeles for possession of heroin?

A: Yes.

Q: Well, they have a technical error on this drug charge of deportability. This is going to cause great trouble for me until the Immigration Service can become comfortable with it. But I'm going to sustain only the entry inspection charge in your case. Tell, sir, have you anything for your defense?

[no answer indicated]

Q: What was your first year here?

A: '71

Q: What family have you here?

A: All of them.

Q: Well, who?

A: My mother, my wife and my kids.

Q: Your mother and your wife, are they legal? Immigrants?

[no answer indicated]

Q: Why aren't you an immigrant through them?

A: I never arrange to file the papers [inaudible]

Q: Well, did you apply for immigrant status in 1971?

[no answer indicated]

Q: What happened? You just filed the papers and forgot about them?

[no answer indicated]

Thank you sir, sit down.

violation of due process.[2] The government bears the burden of proving the waiver. *See Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977) ("it [is] incumbent upon the State to prove 'an intentional relinquishment or abandonment of a known right or privilege.'") (citation omitted).[3] "Courts should 'indulge every reasonable presumption against waiver,' and they should 'not presume acquiescence in the loss of fundamental rights.'" *Barker v. Wingo,* 407 U.S. 514, 525, 92 S.Ct. 2182, 2189, 33 L.Ed.2d 101 (1972) (citations omitted).

■ Although we have held the government may conduct group deportation hearings if the proceedings comport with due process, *United States v. Nicholas–Armenta,* 763 F.2d 1089, 1091 (9th Cir.1985), we have never held that due process is satisfied by a mass silent waiver of the right to appeal a deportation order.

The government argues that requiring a detained alien who wishes to assert his right to appeal to stand for questioning provides sufficient input to ensure the waiver was knowing and intelligent. We disagree. The immigration judge made no effort to determine whether Lopez–Vasquez individually

wished to waive his right to appeal, and the mass waiver by silence made it impossible to determine whether he made a voluntary and intelligent decision to do so.[4] Mass silent waiver creates a risk that individual detainees will feel coerced by the silence of their fellows. The immigration judge's directive that to preserve the right to appeal a detainee must stand up "so that I can talk to you about that" did nothing to lessen this risk. Indeed, it tended to stigmatize detainees who wished to appeal and to convey a message that appeal was disfavored and contingent upon further discussion with the immigration judge.[5]

The government also notes the immigration judge explained the right to appeal, and Lopez–Vasquez was provided with a form explaining his right to an appeal in Spanish. These facts might support an argument that Lopez–Vasquez knew what his right to an appeal was, but they fail to demonstrate that Lopez–Vasquez's silent waiver of the right was itself "considered" and "intelligent." *United States v. Mendoza–Lopez,* 481 U.S. 828, 840, 107 S.Ct. 2148, 2156, 95 L.Ed.2d 772 (1987).[6]

**2.** As the Supreme Court explained in *Mendoza–Lopez,*

> We ... accept the legal conclusions of the court below that the deportation hearing violated due process. If the violation of respondents' rights that took place in this case amounted to a complete deprivation of judicial review of the determination, that determination may not be used to enhance the penalty for an unlawful entry under § 1326. We think that it did. The Immigration Judge permitted waivers of the right to appeal that were not the result of considered judgments by respondents.... Because the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation proceedings.

*Id.,* 481 U.S. at 840, 107 S.Ct. at 2156.

**3.** Other circuits that may appear to have placed the burden of proof on the defendant did not consider the allocation of burden of proof in *Brewer. See United States v. Fares,* 978 F.2d 52, 56–57 (2d Cir.1992); *United States v. Encarnacion–Galvez,* 964 F.2d 402, 406 (5th Cir.1992); *United States v. Holland,* 876 F.2d 1533, 1536 (11th Cir.1989).

**4.** The government misinterprets the record in at least one respect by stating that "appellant, along with the group, state[d] "yeah" in response to the

immigration judge's inquiry as to whether they understood the appellate process." In fact, the group responded to the question whether each understood the *decision* in his case, and the record does not reveal whether Lopez–Vasquez joined in the response.

**5.** In its petition for rehearing, the government asserts some aliens stand when asked to do so if they wish to assert their right to appeal. The government's observation does not undermine our conclusion that this procedure makes it impossible to determine whether aliens who do not stand have made a voluntary and intelligent decision to waive their right to appeal.

**6.** The government also argues Lopez–Vasquez ought to have known of his right to appeal because he is of average intelligence and competence, he never demonstrated confusion during the hearing, and his criminal record and prior deportations demonstrate his familiarity with deportation proceedings and the right to appeal. These arguments miss the point. Lopez–Vasquez apparently knew what an appeal was, and was aware he had some right to an appeal. However, the immigration judge's comments and the requirement that detainees stand if they wished to preserve their rights may have conveyed the message that detainees should accept their deportation and not appeal.

We conclude mass silent waiver impermissibly "presume[s] acquiescence" in the loss of the right to appeal and fails to overcome the "presumption against waiver." *See Barker*, 407 U.S. at 525, 92 S.Ct. at 2189.[7] We reach the same conclusion in *United States v. Gonzalez–Mendoza*, 985 F.2d 1014–1017 (9th Cir. 1993).

### III.

■ In reliance upon the panel opinion in *United States v. Proa–Tovar*, 945 F.2d 1450 (9th Cir.1991), *superseded by* 975 F.2d 592 (9th Cir.1992) (en banc), Lopez–Vasquez made no effort to show prejudice from the failure to appeal or to argue the issue of prejudice in the district court or on appeal. After the parties filed their opening briefs in this case, the en banc court superseded the panel opinion and held that "[a] defendant who seeks to exclude evidence of a deportation order in a prosecution under 8 U.S.C. § 1326 must do more than demonstrate deprivation of the right to a direct appeal from that order. The defendant also bears the burden of proving prejudice." *Proa–Tovar*, 975 F.2d at 595. We requested supplemental briefs on the impact of the en banc decision on this case.

The government argues Lopez–Vasquez "had no relief available to him from his inevitable deportation" because his prior criminal convictions make him ineligible for suspension of deportation, voluntary departure, or lawful admission for permanent residence.[8] Lopez–Vasquez argues remand is necessary because he had no reason to present evidence of prejudice to the district court.

Because neither Lopez–Vasquez nor the district court considered the question of prejudice and the record is incomplete, we are unable to determine whether Lopez–Vasquez

---

7. The cases cited by the government from other circuits do not support its argument that a mass waiver by silence of the right to appeal comports with due process. In *United States v. Holland*, 876 F.2d 1533 (11th Cir.1989), the court ultimately did not decide whether waiver of the right to appeal was knowing and intelligent because it found no prejudice even if the waiver was invalid. In *United States v. Zaleta–Sosa*, 854 F.2d 48 (5th Cir.1988), the court upheld a waiver given during a personal one-on-one exchange between the detainee and the immigration judge. *See also United States v. Chavez–Huerto*, 972 F.2d 1087 (9th Cir.1992) (upholding waiver where defendant expressly waived appeal in one-on-one conversation with immigration judge); *United States v. Villa–Fabela*, 882 F.2d 434 (9th Cir. 1989) (same).

In its petition for rehearing, the government contends our decision conflicts with *United States v. Barraza–Leon*, 575 F.2d 218 (9th Cir. 1978), and *United States v. Calles–Pineda*, 627 F.2d 976 (9th Cir.1980). In *Barraza–Leon*, the court observed,

In response to the judge's questions, only a single, translated reply appears in the record, indicating the substance ... of each respondent's answer.... [A]ll of the respondent's waived their right to counsel, all admitted deportability, and none wished to appeal. As a result, the answers to each question were translated as one answer for all of the respondents.... While it would be more helpful to have a record of the precise, individual statements of each respondent in multiple deportation hearings, due process does not require it.

*Id.* at 221. This passage cannot assist the government because it indicates the immigration judge asked each alien whether he wished to appeal and each responded that he did not wish to appeal.

In *Calles–Pineda,* appellant alleged his due process rights were violated because he was "never personally addressed by the immigration judge." The court observed *Barraza–Leon* upheld "substantial identical" procedures, but never passed on the substance of appellant's claim, although the court noted Calles–Pineda had not alleged he was "prejudiced in fact by the procedures employed." 627 F.2d at 977. *Calles–Pineda* did not hold mass silent waiver of the right to appeal a deportation order comports with due process because that issue was not raised. The citation to *Barraza–Leon* on the claim that appellant had a general right to be personally addressed by the immigration judge cannot transform the failure to rule on that issue into a holding on the issue presented in the instant case because the judge in *Barraza–Leon* asked each deportee whether he wished to appeal and each responded that he did not wish to appeal.

8. The government claims Lopez–Vasquez has been convicted six times since 1978 for theft of property, driving under the influence, burglary, and possession of a controlled substance. An alien is statutorily ineligible for suspension of deportation if he cannot show good moral character, and no person can make such a showing if he has been imprisoned for more than 180 days over the preceding seven years. Voluntary departure requires a showing of good moral character over the previous five years. Lawful admission for permanent residence is not available to aliens who have a committed crime of moral turpitude, which includes theft. *Villa–Fabela*, 882 F.2d at 440–41.

can provide "some concrete evidence indicating that the violation of [his right to appeal] actually had the potential for affecting the outcome of [the] deportation proceedings." *U.S. v. Cerda–Pena*, 799 F.2d 1374, 1379 (9th Cir.1986). Accordingly, we remand to the district court for consideration of this issue.[9]

Remanded.

## DISSENT FROM THE ORDER OF DENIAL OF REHEARING EN BANC

### Aug. 10, 1993.

O'SCANNLAIN, Circuit Judge, with whom HALL, WIGGINS, KOZINSKI, TROTT, T.G. NELSON, and KLEINFELD, Circuit Judges join, dissenting from the order of denial of rehearing en banc:

When a panel of this court announces a new per se rule—indeed, one that misreads an en banc decision we rendered less than a year ago, that rests on an empirical foundation consisting entirely of unsubstantiated speculation, and that in any event adds nothing in the way of real protection for the right it is intended to safeguard—reasonably good cause exists to assemble the en banc court. When that new per se rule stands controlling Supreme Court precedent on its head, and introduces the altogether remarkable notion of a fundamental constitutional right to appeal, the case for en banc rehearing becomes overwhelming. Our court has decided otherwise, and from that decision I must respectfully dissent.

### I

Let us begin where the panel should have, with an examination of the Supreme Court's decision in *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), and that of our en banc court in *United States v. Proa–Tovar*, 975 F.2d 592 (9th Cir.1992) (en banc). For while the panel's opinion indeed quotes the language of *Mendoza–Lopez*, it fails to follow its reasoning. In particular, the panel ignores the implications of the interpretation of *Mendoza–Lopez* upon which we settled in *Proa–Tovar*.

*Mendoza–Lopez* holds that "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." 481 U.S. at 838, 107 S.Ct. at 2155. For this reason, a defendant charged with the crime of re-entering this country after deportation under 8 U.S.C. § 1326 who "was effectively denied his right to direct review" must be permitted "to mount a collateral attack on the deportation proceeding when he [is] prosecuted under section 1326." *Proa–Tovar*, 975 F.2d at 594. So much is clear from *Mendoza–Lopez* itself.

To succeed in his collateral attack, the section 1326 defendant must show that his prior deportation proceeding violated due process—that is, (1) that the proceeding was marked by "fundamental procedural defects," *Mendoza–Lopez*, 481 U.S. at 841, 107 S.Ct. at 2157, and (2) that these defects resulted in *prejudice* to the alien. The prejudice requirement, obscure in *Mendoza–Lopez*, was made clear in *Proa–Tovar*. See *Proa–Tovar*, 975 F.2d at 595 ("the Court has not eliminated prejudice from the equation").

But the panel here misses the point that underlies both *Mendoza–Lopez* and *Proa–Tovar*: the section 1326 defendant's entitlement to mount a collateral attack on his prior deportation is one thing, the merits of that collateral attack something entirely different. Perhaps the panel errs because, in this case, whether Lopez–Vasquez validly waived his right to appeal plays a role in both these determinations. Nevertheless, two distinct questions are involved here. First is the question whether Lopez–Vasquez was deprived of his right to direct review, thus entitling him to mount his collateral attack in this proceeding. Second is the (wholly separate) question whether his deportation was in fact fundamentally unfair.

---

9. We note that if Lopez–Vasquez can make a prima facie showing of prejudice, "the burden then shifts to the government to show that the violation could not have changed the outcome of the deportation proceedings." *Id.*

The panel would have done well to seek guidance from the other circuits that have been forced to "unravel the riddle" of *Mendoza–Lopez. Proa–Tovar,* 975 F.2d at 594. All of these courts have interpreted the Court's decision precisely as outlined above. All agree, that is, that *"Mendoza–Lopez* presupposes a two-step process for determining when an alien can prevent his deportation from being used as a basis for conviction under 8 U.S.C. § 1326." *United States v. Encarnacion–Galvez,* 964 F.2d 402, 406 (5th Cir.1992). "[T]he alien must show not only that he was [1] effectively deprived of his right to direct appeal, but also that [2] the administrative proceedings were fundamentally unfair in some respect that would have entitled him to relief on appeal." *United States v. Fares,* 978 F.2d 52, 57 (2d Cir.1992). *Accord United States v. Santos–Vanegas,* 878 F.2d 247, 251–52 (8th Cir.1989); *United States v. Holland,* 876 F.2d 1533, 1536 (11th Cir.1989) ("The defendant must show that he was deprived of judicial review of the proceeding *and* that the proceeding was fundamentally unfair.") (emphasis supplied).

## II

Against this backdrop, the shortcomings of the panel's opinion emerge starkly.

Although a deportee may waive his right to judicial review of his deportation order, that waiver must be "considered and intelligent." [*Mendoza–Lopez,* 481 U.S. at 837–38, 107 S.Ct. at 2154–55] ... The government bears the burden of proving the ·waiver. *See Brewer v. Williams,* 430 U.S. 387, 404 [97 S.Ct. 1232, 1242, 51 L.Ed.2d 424] (1977) ("it is incumbent upon the State to prove 'an intentional relinquishment or abandonment of a known right or privilege.'") (emphasis supplied, citation omitted).

*United States v. Lopez–Vasquez,* 1 F.3d 751. With all due respect, this is not merely nonsense. It is nonsense on stilts.

## A

First, the nonsense. The panel assigns the government the burden of proving that Lopez–Vasquez validly waived his right to appeal his deportation. As explained above,

however, the validity of such a waiver goes to two different legal questions. Consequently, when the panel says that the government bears the burden of proving a valid waiver, it is really saying two different things. Neither can withstand scrutiny.

On the one hand, the panel is saying that the government bears the burden of proving that Lopez–Vasquez was *not* deprived of judicial review of his deportation proceeding, and is therefore *not* entitled to mount a collateral attack upon that proceeding. In effect, the panel creates a presumption that the defendant *was* improperly denied review and therefore *is* entitled to mount a collateral attack, *in every section 1326 prosecution.* This is simply irrational, and *Mendoza–Lopez* clearly does not envision any such thing. The Court did not mandate that collateral attacks be entertained as a matter of course, but said rather that they must be permitted in exceptional circumstances, that is, where judicial review is *actually* foreclosed because of defects in the deportation proceeding. *See Mendoza–Lopez,* 481 U.S. at 838–40, 107 S.Ct. at 2155–56.

On the other hand, by insisting that the government prove a valid waiver of appeal, the panel is effectively *bifurcating* the burden of proof as to the fundamental fairness of the underlying deportation proceeding. For *Lopez–Vasquez* holds that it is up to the government to prove that the defendant's deportation proceeding was not marred by any fundamental procedural defect—here, a defect implicating the defendant's right to appeal. Yet we held in *Proa–Tovar* that "[t]he defendant ... bears the burden of proving prejudice" from any such defect. 975 F.2d at 595. The result is simply irrational. Nothing can justify carving up the burden of proof on the single issue of fundamental fairness in this ad hoc manner. Because the panel has failed to consider the implications of its decision within the framework provided by *Mendoza–Lopez* and *Proa–Tovar,* it makes a hodge-podge of the assignment of burdens of proof.

## B

Now the stilts. As authority for the proposition that the government bears the burden

of proving waiver here, the panel cites *Brewer v. Williams*. The citation is obviously intended as more than merely illustrative; the panel clearly regards *Brewer* as *controlling* precedent. Thus we are told in a footnote that "[o]ther circuits that may appear to have placed the burden of proof on the defendant did not consider the allocation of burden of proof in *Brewer.*" *Lopez–Vasquez*, op. at 754 n. 3. (citing cases).

But *Brewer* controls nothing in this context. At issue in that famous case was a purported waiver of the Sixth Amendment right to counsel. The criminal defendant's right to counsel, of course, is a *fundamental constitutional* right, "indispensable to the fair administration of our adversary system of *criminal* justice." *Brewer*, 430 U.S. at 398, 97 S.Ct. at 1239 (emphasis supplied). Accordingly, the *Brewer* Court employed the "strict standard" of waiver set forth in *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), *Brewer*, 430 U.S. at 404, 97 S.Ct. at 1242, which is, indeed, "[t]he strictest test of waiver which might be applied." *Id.* at 433, 97 S.Ct. at 1257 (White, J., dissenting). In this context, it is no surprise that the government "bears a heavy burden" of proof. *Id.* at 402, 97 S.Ct. at 1241 (citation omitted).

At issue in this case, however, is a waiver of the *statutory* right to judicial review of the result of a *civil* deportation proceeding. Such a right is in no sense indispensable to the fair administration of justice—it is not guaranteed as a matter of due process. Indeed, the right to an appeal is simply *not* protected by the Constitution, in this or any context. So well established is this principle that fully a century ago the Supreme Court could say that "[a] citation of authorities on the point is unnecessary." *McKane v. Durston*, 153 U.S. 684, 687, 14 S.Ct. 913, 915, 38 L.Ed. 867 (1894).

What, then, justifies the panel's reliance on *Brewer?* Why must an alien's alleged waiver of the statutory right to appeal a deportation order be tested according to "the strictest possible" standard of waiver, the standard applied by the Court to waivers of *fundamental constitutional rights* in a *criminal* context, a standard under which "it is incumbent upon the State" to prove waiver? The panel does not explain.[1]

C

Under the stilts, we may add a pair of skates:

> "Courts should 'indulge every reasonable presumption against waiver,' and they should 'not presume acquiescence in the loss of fundamental rights.'" *Barker v. Wingo*, 407 U.S. 514, 525 [92 S.Ct. 2182, 2189, 33 L.Ed.2d 101] (1972) (citations omitted).

*Lopez–Vasquez*, op. at 754. The problem with this passage is that *Barker v. Wingo* has no application in this context. Like *Brewer*, *Barker* was a case involving a purported waiver of fundamental constitutional rights— here, the right to a speedy trial under the Sixth Amendment. The Supreme Court's injunction to "indulge every reasonable presumption against waiver" was thus premised on fear of "acquiescence in the loss of *fundamental* rights." Indeed, if we look again to *Johnson v. Zerbst*, which is the source of the language quoted in *Barker* and relied upon by the panel here, this very point comes through loud and clear:

> It has been pointed out that "courts indulge every reasonable presumption against waiver" *of fundamental constitutional rights* and that we "do not presume acquiescence in the loss of fundamental rights."

304 U.S. at 464, 58 S.Ct. at 1023 (citations omitted, emphasis supplied).

---

1. In *Proa–Tovar*, the en banc court concluded that "[a] defendant who seeks to exclude evidence of a deportation order in a prosecution under 8 U.S.C. § 1326 must do more than demonstrate deprivation of the right to a direct appeal from that order. The defendant also bears the burden of proving prejudice." *Proa–Tovar*, 975 F.2d at 595. In the face of this unambiguous statement to the contrary, the panel maintains that the government bears the burden of proving the validity of Lopez–Vasquez's waiver of appeal. How can the panel take a position that is flatly inconsistent with an en banc decision on which the ink is scarcely dry without even attempting to explain itself?

Let us repeat: the right to an appeal is *not* protected by the Constitution, even for criminal defendants. The right to an appeal is a *statutory* right ... period. What is it, then, that justifies "indulging every reasonable presumption against waiver" of the right to appeal, as we would waiver of the right to counsel, or the right to jury trial, or the right to confront one's accusers? Again, the panel does not provide an answer.

### D

The panel has imported the strict standard applicable to the waiver of fundamental constitutional rights, and the presumption against waiver of such rights, into a context where the *waiver* of constitutional rights is not even remotely at issue. Under *Mendoza–Lopez*, Lopez–Vasquez enjoys three different due process rights: (1) his right as a section 1326 defendant to collateral review of a prior deportation where direct appeal was improperly denied him; (2) his right as a deportation proceeding respondent to a fundamentally fair deportation proceeding; (3) his right as a section 1326 defendant not to be subject to criminal penalties on the basis of a prior deportation that was not fundamentally fair. No one claims that Lopez–Vasquez waived any of these rights, whether validly or invalidly. All of these rights are alive and well in this proceeding, the very point of which is to vindicate those rights if they are indeed at risk. The only right Lopez–Vasquez is alleged to have waived is his unenumerated statutory right to an appeal.

Yet the panel proceeds as if *Mendoza–Lopez* made the right to appeal a deportation order a *necessary* aspect of due process, such that a waiver of the right to appeal such an order *is* a waiver of a due process right. If this were true, it would indeed follow, as the panel seems to think, that the burden of proving waiver should be placed on the government, and that the presumption against such waiver should apply. But it is not true. *Mendoza–Lopez* does not say that due process guarantees the right to appeal a deportation order; it says that due process guarantees the right to some kind of judicial review of the deportation proceeding before the order may be relied upon to establish an element of a criminal offense. *Mendoza–Lopez* does not say that an alien who is denied the right to appeal his deportation order is thereby denied due process; it says that an alien who is *prejudiced* by the denial of his right to appeal in such a way as to render his deportation proceeding *fundamentally unfair* is denied due process.

*Mendoza–Lopez* does not, in short, say that the right to an appeal is guaranteed as a matter of due process of law. The waiver of the right to an appeal is not the waiver of a constitutional right. Cases setting forth standards for reviewing waivers of fundamental constitutional rights are not controlling here—indeed, they are not even relevant. The reasoning of *Lopez–Vasquez*, then, is just plain wrong.

### E

This lengthy analysis is necessary because the panel's holding is entirely dependent upon the presumption against waiver: "We conclude mass silent waiver impermissibly 'presume[s] acquiescence' in the loss of the right to appeal and fails to overcome the 'presumption against waiver.' *See Barker*, 407 U.S. at 525 [92 S.Ct. at 2189]." The presumption indulged in by the panel is the only basis for thinking that a per se rule can or should govern here. That rule is utterly compromised by its reliance on this nonexistent presumption, and it should not have been allowed to stand.

### III

There's more. The panel has entirely overlooked the significance of the fact that what is involved here is a *collateral* attack on the constitutionality of a prior adjudication. The government here introduced a facially valid deportation order in an effort to establish one element of the offense defined by section 1326. Lopez–Vasquez "sought to deprive [the order] of [its] normal force and effect in a proceeding that had an independent purpose other than to overturn the prior judgment[ ]." *Parke v. Raley*, —— U.S. ——, ——, 113 S.Ct. 517, 523, 121 L.Ed.2d

391 (1992). "[B]y definition," that is a collateral attack. *Id.*

This makes a world of difference, as Justice O'Connor recently explained in *Parke v. Raley.* At issue was a Kentucky sentence enhancement scheme which placed upon the defendant the burden of proving the invalidity of any prior convictions once the state produced a facially valid prior judgment. The Sixth Circuit had held that this scheme was unconstitutional when applied to a defendant who claimed his prior convictions were based on guilty pleas entered in violation of the rule in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

> The Sixth Circuit thought rejection of Kentucky's burden-shifting scheme compelled by *Boykin*'s statement that the waiver of rights resulting from a guilty plea cannot be "presume[d] ... from a silent record." [395 U.S.] at 243 [89 S.Ct. at 1712].
>
> We see no tension between the Kentucky scheme and *Boykin. Boykin* involved direct review of a conviction allegedly based upon an uninformed guilty plea. Respondent, however, never appealed his earlier convictions. They became final years ago, and now he seeks to revisit the question of their validity in a separate recidivism proceeding. *To import Boykin's presumption of invalidity into this very different context would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the "presumption of regularity" that attaches to final judgments, even when the question is waiver of constitutional rights.* Although we are perhaps most familiar with this principle in habeas corpus actions, it has long been applied equally to other forms of collateral attack.

*Raley,* —— U.S. at ——, 113 S.Ct. at 523 (emphasis supplied, citations omitted).

These principles have been unvaryingly followed in our own cases. *See, e.g., United States v. Pricepaul,* 540 F.2d 417, 423 (9th Cir.1976) (defendant bears the burden of proving invalidity of guilty plea for purposes of defending against charge of being felon in possession of firearm); *United States v. Carroll,* 932 F.2d 823, 825 (9th Cir.1991) (defendant bears burden of proving constitutional invalidity of prior convictions used in sentencing under the Guidelines). The decisions of the other courts of appeals are to the same effect. *See Raley,* —— U.S. at ——, 113 S.Ct. at 525 (citing examples in different contexts).

The panel has simply ridden roughshod over the "presumption of regularity" that ought to attach to a final, facially valid deportation order. Once the government produced such an order, it was up to Lopez–Vasquez to rebut that presumption, and to prove the existence of fundamental unfairness in the underlying deportation proceeding. The panel, however, has gone in precisely the opposite direction: it has conjured up a presumption of *irregularity.* This presumption stands in turn upon the "presumption against waiver" of the "fundamental constitutional" right to appeal, which does not exist, and which, even if it did exist, would not justify shifting the entire burden of proof to the government: "even when a collateral attack on a final [adjudication] rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant." *Id.* at ——, 113 S.Ct. at 524 (citation omitted).

Nonsense on stilts on skates ... and on thin ice to boot.

### IV

And there's still more. The panel has crafted a per se rule to govern the question of *waiver.* Yet the Supreme Court has repeatedly stressed that "inflexible *per se* rule[s]" are all but entirely out of place in this context, because the question of waiver is inherently fact-specific:

> A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver ... must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background experience and conduct of the accused.

*Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Over and

over again, the Court has approved this approach, under which the validity of a purported waiver is to be determined "under the totality of the circumstances" bearing on that waiver. *See, e.g., Solem v. Stumes,* 465 U.S. 638, 647, 104 S.Ct. 1338, 1343, 79 L.Ed.2d 579 (1984); *Oregon v. Bradshaw,* 462 U.S. 1039, 1046, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983) (plurality opinion); *Fare v. Michael C.,* 442 U.S. 707, 724–25, 99 S.Ct. 2560, 2571–72, 61 L.Ed.2d 197 (1979); *North Carolina v. Butler,* 441 U.S. 369, 374–75, 99 S.Ct. 1755, 1757–58, 60 L.Ed.2d 286 (1979). This fact specific approach to waiver is the rule "[e]ven when a right so fundamental as that to counsel at trial is involved." *Butler,* 441 U.S. at 374, 99 S.Ct. at 1758. Indeed, it has been observed that there is but "a solitary exception to [the Court's] waiver jurisprudence," in which the case-by-case approach has been abandoned in favor of a per se rule. *Minnick v. Mississippi,* 498 U.S. 146, 160–62, 111 S.Ct. 486, 495, 112 L.Ed.2d 489 (1990) (Scalia, J., dissenting).[2]

If the validity of an individual's waiver even of fundamental constitutional rights is all but invariably to be determined according to "the totality of the circumstances," what justifies a per se rule of invalidity here, where the *statutory* right to appeal is in question? The panel doesn't say.

Indeed, while the panel has gone out of its way to import *Zerbst*'s strict standard of waiver (by way of *Brewer*) and its indulgence of every presumption against waiver (by way of *Barker*), it has gone equally out of its way to ignore *Zerbst*'s injunction that the validity of a waiver "must depend, in each case, on the particular facts and circumstances surrounding that case." Nonsense on stilts, skating on thin ice … blindfolded.

## V

Teetering awkwardly on such a precarious legal foundation, the panel's per se rule is a bad rule, untenable as a matter of logic and undesirable as a matter of policy.

The panel holds that the procedure employed by the immigration judge, whereby the respondents were invited to stand up if they wished to appeal, *always* "makes it impossible to determine whether aliens who do not stand have made a voluntary and intelligent decision to waive their right to appeal." *Lopez–Vasquez,* op. at 754 n. 5. But this is plainly false, as anyone with experience in these kinds of cases must understand. To be sure, the use of this procedure will *sometimes* prevent a reviewing court from determining that an individual made a considered and intelligent decision not to appeal. But this is by no means invariably the case. In some cases, the record will demonstrate that a particular individual's waiver of appeal is fully informed and eminently rational, even though the transcript does not record him as saying, "I understand that I may appeal, but I do not wish to do so." By the same token, one can easily imagine instances in which the record will contain just such a statement, yet a reviewing court will be firmly convinced that the words did not reflect a voluntary decision intelligently made. The point is simply that it is not always (or even usually) impossible for us to judge the character of a decision not to appeal just because that decision is expressed non-verbally. *See United States v. Ortiz–Rivera,* 1 F.3d 763 (9th Cir. 1993) (per curiam).[3]

---

**2.** Justice Scalia was referring to *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which held that a criminal suspect's invocation of his *Miranda* right to have counsel present gives rise to an "irrebuttable presumption" against voluntary waiver of that right in response to police-initiated interrogation. *Minnick* itself, of course, is to the same effect.

**3.** *Ortiz–Rivera* provides as good an example as could be wished of just how misguided is the per se rule of *Lopez–Vasquez,* and just how foolish and wasteful are the results it forces upon us.

That case, like this one, was a section 1326 prosecution in which the defendant sought to mount a collateral attack upon his underlying deportation proceeding. The facts were not disputed: Ortiz–Rivera entered a conditional guilty plea in which he *stipulated* that he had suffered previous state convictions for armed robbery, the sale or transportation of cocaine, and the unlawful driving or taking of a vehicle, that he had been twice deported in the past, and that he had illegally entered the United States on three separate occasions. 1 F.3d at 752.

In the deportation hearing he challenged as fundamentally unfair, meanwhile, Ortiz–Rivera was one of seven respondents. All were *twice* advised by the immigration judge ("IJ") that they had a right to appeal his decision as to their

This is a fact we have unambiguously acknowledged in cases treating a criminal defendant's waiver of the right to appeal. Thus we have held that "a Rule 11 colloquy on the waiver of the right to appeal is not a prerequisite to a finding that the waiver is valid; a finding that the waiver is knowing and voluntary is sufficient." *United States v. DeSantiago–Martinez*, 980 F.2d 582, 583 (9th Cir. 1992). The panel's decision therefore gives rise to a staggering anomaly whereby, in this circuit, the appeal rights of the respondents in a deportation proceeding, being waivable only by express declaration in open court, are thus subject to greater procedural protections than are the analogous rights of the defendant in a criminal case. *Cf. United States v. Nicholas–Armenta*, 763 F.2d 1089, 1090 (9th Cir.1985) ("Respondents in a civil deportation hearing ... are not entitled to the same ... rights afforded a criminal defendant.").

Moreover, the empirical basis on which the panel erects its rule is dubious at best. The panel assumes that eliciting waiver by inviting an alien to stand if he wishes to appeal "creates a risk that individual detainees will feel coerced by the silence of their fellows," and "tend[s] to stigmatize detainees who wish[ ] to appeal and to convey a message that appeal was disfavored." *Lopez–Vasquez*, slip op. at 6638. Where do these assumptions come from?

Given the facts of this case, and of the many similar cases we review, it is entirely plausible to indulge a quite different set of assumptions. Lopez–Vasquez surely knew at the time of his deportation hearing that he had "been convicted six times for theft of property, driving under the influence, burglary, and possession of a controlled substance." *Id.* at 755 n. 8. In addition, "the immigration judge explained the right to appeal, and Lopez–Vasquez was provided with a form explaining his right to appeal in Spanish." *Id.* at 754. Thus even the panel must admit that "Lopez–Vasquez apparently knew what an appeal was, and was aware he had some right to appeal." *Id.* at 754 n. 6. It is not at all unreasonable to think that Lopez–Vasquez remained seated when asked if he wished to appeal his deportation because he knew full well that an appeal could not possibly help him, and did not wish to be confined in a detention center for as long as it might take to process such a fruitless effort. If we are to traffic in assumptions, then we might very well assume that an alien's decision not to appeal generally rests on rational self-interest that counsels the hopelessness of an appeal rather than the "coercion" or "stigma" identified by the panel. *See Ortiz–Rivera, supra.*[4]

---

deportability. Ortiz–Rivera, along with all other respondents, *individually* stated that he understood that he had such a right. *Id.* at 766.

He then engaged in an *individual* colloquy with the IJ, *in English*, which the IJ observed he spoke well. During that colloquy, Ortiz–Rivera declined the offer of a free lawyer, admitted that he had been convicted of the cocaine offense, and further admitted that he was deportable as charged. He was then informed that, having lived in this country for some time, he might be eligible for a waiver of deportation, and asked whether he had ever had any legal immigration papers. He answered in the negative, explaining that he "was in trouble"—apparently a reference to his criminal record. Finally, he was asked whether there was "any argument at all" that he had a legal right to be in this country. He said no. *Id.* at 766–68.

After the IJ had questioned the other six respondents, all of whom conceded deportability, he informed them that he was going to sign an order for their deportations. He then re-advised the respondents that they had a right to appeal his decision, and invited anyone who wished to appeal to stand so that he could "explain the appeal process in more detail and have someone help you fill out the appeal application." None of the respondents stood up. *Id.* at 768.

Despite such a record, *Lopez–Vasquez* compelled us to hold that Ortiz–Rivera's decision to remain seated when invited to exercise his right to appeal did not manifest a considered and intelligent decision to waive that right. That conclusion defies reality in a fashion too obvious to require further comment.

4. Again, *Ortiz–Rivera* exposes the flaws in the panel's opinion here. There exists not even the remotest chance that, when invited to stand if he wished to appeal, Ortiz–Rivera failed to do so because he felt "coerced by the silence of [his] fellows," or feared being "stigmatized" by his desire for justice. Ortiz–Rivera didn't stand because he knew he had no legal right to be in this country in the first place, and knew as well that, given his criminal record, he had no hope of remaining. He made a "considered" and "intelligent" decision—indeed, a downright *sensible* decision—to accept immediate deportation, and freedom in his native Mexico, rather than to remain in a detention center for who-knows-

Even if the panel is right to be concerned about "coercion" and "stigma" in these circumstances, the per se rule it has crafted does precious little to address these concerns. Lopez–Vasquez was one of twelve respondents in the underlying deportation proceeding. The procedure mandated by the panel here would require an immigration judge to ask each respondent individually whether he wished to appeal. Suppose Lopez–Vasquez had been the twelfth respondent so questioned, and suppose (as is not unlikely) that each of his fellows had declined to appeal before him. Now suppose that the immigration judge turns his attention to Lopez–Vasquez: "And *you*, sir, do *you* wish to appeal my ruling?" Might this not be even *more* coercive than the procedure actually employed here, making it even harder for the respondent to assert his desire for review? The coercion and stigma the panel fears is inherent in any group deportation proceeding. Such proceedings, however, unquestionably do not offend due process. *See, e.g., Nicholas–Armenta*, 763 F.2d at 1091. By its oversolicitous concern for one aspect of these proceedings, the panel may have actually done more harm than good to the rights it means to protect.

In any event, if the panel believed that it could not find a valid waiver *on these facts*, as it evidently did, then it should have predicated its order of remand *on these facts*. The general assumptions advanced by the panel in no way support a per se rule that forces us to disregard the specific facts of particular cases. The rule itself, meanwhile, will inevitably foster results that are both silly and unjust. Indeed, it has already happened. *See Ortiz–Rivera, supra.*

VI

Kersplat! Nonsense on stilts, skating blindfolded on thin ice must topple in the end.

The law of this circuit now states that, in every section 1326 prosecution, the government must rebut the presumption that the

defendant was deprived of his right to review of the underlying deportation order. The government must further rebut the presumption that the deportation proceeding was not marred by any fundamental procedural defect. The government's *failure* to carry its burden as to either of these two presumptions has the absurd consequence of *shifting* the burden to the defendant, who then, mysteriously, must prove prejudice. The law of this circuit also now holds that a non-verbal waiver of the right to appeal is per se unknowing, unconsidered, and unintelligent, and that reviewing courts lack the means to discern a valid waiver from a record that does not contain some approximation of the verbal ritual, "I do not wish to appeal." To arrive at this weird state of affairs, we have had to suffer one of our three-judge panels to cast aside, wittingly or not, the authority of the Supreme Court and of our own en banc court.

Our law should be otherwise. Our sufferance should not extend so far. We have passed up the opportunity to set things right. I respectfully dissent.

---

how-long while an obviously futile appeal wound its way through the system. And yet we were compelled by *Lopez–Vasquez* to hold that Ortiz–Rivera was improperly deprived of his right to

judicial review, and to remand the case to the district court for further proceedings. District courts have many more important things to do.