# In re Otoniel VILLALBA-Sinaloa, Respondent

## File A70 827 126 - Helena

### *Decided March 6, 1997*

### U.S. Department of Justice
### Executive Office for Immigration Review
### Board of Immigration Appeals

(1) Language contained in the Order to Show Cause and Notice of Hearing (Form I-221), which provides that notice of deportation hearings will be sent only to a respondent's last known address and that failure to provide an address may result in an in absentia hearing, is a reasonable construction of the notice requirements set forth in section 242B of the Immigration and Nationality Act, 8 U.S.C. § 1252b (1994).

(2) The prohibition set forth in *Purba v. INS*, 884 F.2d 516 (9th Cir. 1989), that a deportation hearing may not be conducted telephonically absent a respondent's affirmative waiver of the right to appear in person, does not apply in properly conducted in absentia proceedings.

Pro se

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Ann M. Tanke, District Counsel

AMICUS CURIAE[1]: Iris Gomez, Esquire, Boston, Massachusetts

AMICUS CURIAE[1]: Ann Benson, Esquire, Seattle, Washington

AMICUS CURIAE[1]: Stanley P. Wagner, Jr., Esquire, Seattle, Washington

BEFORE: Board Panel: SCHMIDT, Chairman; HURWITZ, Board Members. Dissenting Opinion: ROSENBERG, Board Member.

SCHMIDT, Chairman:

In a decision dated December 23, 1994, an Immigration Judge terminated deportation proceedings which had been commenced against the respondent when the Immigration and Naturalization Service issued an Order to Show Cause and Notice of Hearing (Form I-221) dated August 5, 1994, and filed it with the Seattle Immigration Court on October 4, 1994. The Service has

---

[1] This Board acknowledges with appreciation the thoughtful arguments raised in amicus curiae's brief.

appealed. The appeal will be sustained and the record will be remanded to the Immigration Judge.

## I. PROCEDURAL HISTORY

On August 5, 1994, the respondent was personally served with the Order to Show Cause. He failed to provide his address at that time. Owing to his failure to provide an address, the respondent was not notified of his hearing, and, consequently, failed to appear. The Service requested an in absentia hearing.

In his decision, the Immigration Judge determined that the Order to Show Cause failed to adequately apprise the respondent pursuant to section 242B(a)(1)(F)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(a)(1)(F)(iii) (1994), that if he failed to provide an address, he would not be notified of his hearing. He based this finding, in part, on differences between the respective language of the statute and of its implementing regulations, which dictate what information must be contained in the Order to Show Cause. The Immigration Judge concluded that to proceed under these circumstances would be fundamentally unfair, and he therefore terminated proceedings.

On appeal, the Service argues that the Order to Show Cause expressly notified the respondent that he was required by law to provide an address where he could be contacted; that he was required to provide written notice of any change in his address; that any notice would be mailed only to the last address provided; and that if the respondent failed to appear at his hearing, he would be ordered deported in his absence. The Service argues that by failing to provide an address, the respondent was clearly aware that no notice could be mailed to him. Therefore, the Order to Show Cause notified the respondent of the consequences of his failure to appear, and an in absentia hearing was appropriate.

## II. APPLICABLE LAW

Section 242B of the Act specifies deportation procedures. *See Matter of Gonzalez-Lopez*, 20 I&N Dec. 644 (BIA 1993). Section 242B(a)(1)(F) provides, in part, that the Order to Show Cause must notify the alien in writing of the requirement that the alien must immediately provide the Attorney General with a written record of an address and telephone number at which the alien may be contacted respecting proceedings under section 242, and it must notify the alien of the consequences of failure to provide address and telephone information. Section 242B(a)(2) of the Act details the required notice of time and place of proceedings and specifically instructs that, in the case of an alien not in detention, a written notice shall not be required if the alien has failed to provide the address required under section 242B(a)(1)(F). Finally, section 242B(c) of the Act mandates the consequences of failure to appear at

a scheduled deportation hearing after written notice has been provided, and states that no written notice shall be required if the alien has failed to provide the address required under section 242B(a)(1)(F).

The regulations do not exactly mirror the statute. The applicable regulations require that the Order to Show Cause inform an alien that failure to provide a current address may result in an in absentia hearing. 8 C.F.R. § 3.15(b)(7) (1996). An alien who fails to appear for deportation proceedings may be deported in absentia if, inter alia, the Immigration Judge is satisfied that written notice of the consequences of failure to appear, "as set forth in section 242B(c) of the Act," was provided to the respondent. 8 C.F.R. § 3.26(b) (1996). Finally, if an alien fails to provide his or her address as mandated, no written notice is required for an Immigration Judge to proceed in absentia. 8 C.F.R. § 3.26(c).

## III. ANALYSIS

Upon consideration, we find that the regulations adopted by the Attorney General to implement section 242B of the Act reasonably construe the provisions set forth in the statute, including the requirements concerning notice of hearing which appear in the Order to Show Cause. Therefore, we disagree with the Immigration Judge's conclusion that the discrepancies between the respective language of the statute and of the regulations creates an ambiguity which makes the current deportation proceedings fundamentally unfair.

The notice provided to an alien in the Order to Show Cause must be reasonable under all the circumstances, but need not be an exact recitation of the language set forth in the statute. *See El Rescate Legal Serv., Inc. v. EOIR*, 959 F.2d 742, 750 (9th Cir. 1991) (upholding regulations adopted by the Attorney General which "reasonably construe" the statute committed to his discretion). The United States Court of Appeals for the Ninth Circuit has acknowledged that control over immigration matters is a sovereign prerogative. *Id*. at 750. According to the court, unless the Attorney General's construction of a statute is arbitrary, capricious, or manifestly contrary to the statute, a reviewing body may not impose alternative procedures that merely displace policy choices made by the sovereign. *Id*.; *see also Landon v. Plasencia*, 459 U.S. 21, 34-35 (1982).

In the instant case, the respondent, who is not in detention, was personally served with an Order to Show Cause. The Order to Show Cause advised the respondent in writing that he was required to immediately provide, in writing, an address where he could be contacted. The Order to Show Cause also notified the respondent in writing that any notices would be mailed only to the address which he provided. The respondent was advised that he would be ordered deported in his absence if his deportability was established and he had failed to appear at his hearing after receiving appropriate notice. Finally, the respondent was informed that he could file a motion to reopen if he could

establish that he had not received written notice of his hearing and he had provided his address as required.

The Order to Show Cause contained this written information in both English and Spanish, as required by the statute. In addition, the Order to Show Cause contains a certificate of translation and oral notice executed by a designated agent of the Service which indicates that the respondent was orally advised, in his native language, of his rights and responsibilities as delineated in the Order to Show Cause.

Inasmuch as Congress has mandated under section 242B(c)(2) of the Act that no hearing notice is required where an alien fails to provide the required address information, we find that the respondent received the statutorily required notice of his hearing.[2] Therefore, the Immigration Judge's determination that the respondent had not received sufficient notice of his rights or of his hearing is in error and proceedings should not have been terminated on this basis. Accordingly, the Service's appeal will be sustained and the record will be returned to the Immigration Judge for further proceedings consistent with the provisions of section 242B of the Act. We note that under section 242B(c) of the Act, if an alien fails to provide an address at which he can be contacted and does not appear for a scheduled deportation hearing, he is to be ordered deported in his absence if the Service establishes his deportability.

## IV.  TELEPHONIC HEARING

In his decision, the Immigration Judge also noted that the respondent's hearing was conducted telephonically, and he pointed out that the Ninth Circuit has held that a telephonic hearing is not permissible without the consent of the alien. *See Purba v. INS*, 884 F.2d 516 (9th Cir. 1989).

On appeal, the Service argues that by failing to appear for his hearing, the respondent waived his right to object to a telephonic hearing as set forth in *Purba v. INS, supra*. The Service thus contends that the Immigration Judge erred in terminating proceedings on this basis as well and requests that the case be remanded for an in absentia hearing.

We find that the prohibition set forth in *Purba v. INS, supra*, that a deportation hearing may not be conducted telephonically unless the respondent affirmatively waives his right to appear in person, does not apply to the instant case. When a deportation hearing is properly conducted in absentia, the *Purba* rule is inapposite because the respondent is, by definition, not

---

[2]  Absent this provision, an alien could postpone deportation proceedings indefinitely simply by failing to provide an address where he or she could receive notice. We note that section 242B was enacted to provide stricter and more comprehensive deportation procedures, particularly for in absentia hearings, to ensure that proceedings are brought to a conclusion with meaningful consequences. *Matter of Grijalva*, 21 I&N Dec. 27 (BIA 1995). Section 242B(c)(2) of the Act comports with the overall purpose and intent of the statute.

present. Thus, whether the proceeding is conducted telephonically or in person is a distinction without a difference.

## V. CONCLUSION

In light of the foregoing, we find it appropriate to remand the record to the Immigration Judge for a further hearing. In the event that the Service has, since the initiation of these proceedings, become aware of an address pertaining to the respondent, or becomes aware of such prior to the upcoming hearing, proper notice should be provided to the alien at that last known address.

Accordingly, the appeal will be sustained and the record will be remanded to the Immigration Judge.

**ORDER:** The appeal of the Immigration and Naturalization Service is sustained.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with this decision.

*DISSENTING OPINION:* Lory D. Rosenberg, Board Member

I respectfully dissent.

The case before us raises fundamental questions regarding fairness in deportation proceedings. The respondent was served with an Order to Show Cause ("OSC") in Billings, Montana, which alleged that he was an alien, charged him with being deportable, and informed him that a hearing would be held in Seattle, Washington, at a date and time to be set. The respondent was not present at this subsequently scheduled hearing; therefore, the Immigration and Naturalization Service sought an order of deportation in absentia under section 242B of the Immigration and Nationality Act, 8 U.S.C. § 1252b (1994). According to my reading of the express requirements of the statute, and my appreciation of the practical realities involved, the Immigration Judge in proceedings below properly declined to enter an order of deportation.

In the course of the respondent's deportation hearing, held in absentia, no evidence was presented by the Service in satisfaction of its burden to prove by evidence which is clear, unequivocal, and convincing, that the respondent was notified as the statute requires. Section 242B(c)(1) of the Act; *see also* 8 C.F.R. § 3.26(a) (1996). In particular, there is no evidence in the record that when previously served with an OSC, the respondent was expressly informed, as required, of the consequences of failing to provide an address, i.e., that failure to provide an address would result in forfeiture of notice of any future hearing. Sections 242B(a)(1)(F)(iii), (a)(2), (c)(1) of the Act;[1] *see*

---

[1] Section 242B was added by section 545(a) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5061-63, effective not less than 6 months following the Attorney General's certification of a Central Address File, and was amended by section 306(b)(6) of the Miscellaneous and Technical Immigration and Nationality Amendments, Pub. L. No. 102-232, 105 Stat. 1733, 1753, effective as if included in the Act of 1990.

*also Woodby v. INS,* 385 U.S. 276 (1966). In addition, no evidence was presented indicating that, when he was served with the OSC, the respondent had an address which he deliberately failed or refused to provide. Section 242B(a) (1)(F)(i) of the Act.

The record contains no evidence establishing that the respondent was afforded a reasonable opportunity to provide an address following issuance of the OSC, in compliance with the statute and regulations, in order to facilitate subsequent notifications. 8 C.F.R. § 3.15(c)(1) (1996). There also is no evidence that the respondent was properly notified by the Service when, 2 months after its issuance and service upon the respondent, the OSC was filed with the Immigration Court, thus vesting the court with jurisdiction and commencing deportation proceedings. 8 C.F.R. §§ 3.14, 3.32 (1996).

There is no dispute that, after being apprehended and issued an OSC by the Service, the respondent received no notice either that a deportation hearing was scheduled, or when or where that proceeding would occur. Indeed, on appeal, the respondent's interests are represented by amici unassociated with the respondent, and it is doubtful that he even is aware of the in absentia hearing that was conducted below, of the Immigration Judge's order terminating proceedings, or of the instant appeal by the Service. Although I understand the majority's desire for an efficient and effective process, I cannot agree with their reasoning or the shortcuts I believe their conclusion sanctions. Therefore, I dissent.

## I. ISSUES TO BE DETERMINED

Let me be clear at the outset: what is at issue in this case is not the constitutionality of the statutory provisions we administer governing in absentia deportation hearings,[2] but the implementation of those provisions. The principal issue presented is whether the statutory language and applicable due process requirements permit the Attorney General to enter an order of deportation, when the respondent has not been notified, as the statute requires, that his failure to provide an address will result in forfeiture of any future notice informing him of the time and place of his hearing. *See* sections 242B(a)(1)(F)(iii), (c)(2) of the Act.

There exist two corollary issues related to the regulations which purport to implement section 242B of the Act.[3] First, given current agency practices,

---

[2] Although we do not have jurisdiction to determine the constitutionality of statutes we administer, *Matter of U-M-,* 20 I&N Dec. 327 (BIA 1991), *aff'd sub nom. Urbina-Mauricio v. INS,* 989 F.2d 1085 (9th Cir. 1993); *Matter of Cenatice,* 16 I&N Dec. 162 (BIA 1977), we construe them mindful of the principle that statutes are best interpreted in a way which avoids raising constitutional questions. *See Public Citizen v. United States Dep't of Justice,* 491 U.S. 440 (1989); *Bagues-Valles v. INS,* 779 F.2d 483 (9th Cir. 1985); *Matter of Silva,* 16 I&N Dec. 26 (BIA 1976).

[3] We are bound to follow regulations promulgated by the Attorney General. *Matter of Ponce De Leon,* 21 I&N Dec. 154 (BIA 1996). However, we also may take appropriate action when

there is the question of whether it is reasonable for a respondent to forfeit notice of future hearings because he is unable to comply with 8 C.F.R. § 3.15(c)(1), requiring him to provide his address to the Immigration Court within 5 days of the OSC's service if it was not provided initially. Second, there is the question of whether 8 C.F.R. § 3.14, which requires the Service to serve a copy of the OSC on the respondent when it files with the Immigration Court, serves a purpose of benefit to the alien, and if so, whether its violation is prejudicial, rendering an in absentia order issued under such circumstances invalid. These issues may demand an examination of the availability and feasibility of alternate means of notification or address reporting.

## II. STATUTORY AND REGULATORY CONSIDERATIONS

If the language of a statute is plain and unambiguous it must be given effect. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843-44 (1984); *Matter of Shaar,* 21 I&N Dec. 541 (BIA 1996) (holding that the language of section 242B(e)(2) is clear on its face and therefore dispositive because when the language of the statute is clear, judicial inquiry is complete).

Section 242B(a) of the Act provides:

(1) ORDER TO SHOW CAUSE.—In deportation proceedings under section 242, written notice . . . shall be given . . . specifying the following:

. . . .

(F)(i) The requirement that the alien must immediately provide (or have provided) the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted respecting proceedings under section 242.

(ii) The requirement that the alien must provide . . . a written record of any change of the alien's address or telephone number.

(iii) *The consequences under subsection (c)(2)* of failure to provide address and telephone information pursuant to this subparagraph. (Emphasis added.)

The statute plainly requires that a respondent must be given notice in the OSC of the consequences of his failure to provide "a written record of an address and telephone number (if any) at which the alien may be contacted." Sections 242B(a)(1)(F)(i), (iii). "The consequences under subsection (c)(2)" are that, provided the Service meets its burden of proof, an in absentia order shall be entered without the respondent ever having been given prior written notice, which is ordinarily required under sections 242B(a)(2) and (c)(1).

The ordinary and obvious meaning of a phrase is not to be lightly discounted. INS v. Cardoza-Fonseca, 487 U.S. 421, 431 (1987) (citing *Russello v. United States*, 464 U.S. 16, 21 (1983)); *see also First United Methodist*

---

regulations that function to secure a respondent's rights are not followed or the improper implementation of those regulations violates fundamental fairness. *Matter of Garcia-Flores,* 17 I&N Dec. 325 (BIA 1980); *see also Matter of Santos*, 19 I&N Dec. 105 (BIA 1984).

*Church of Hyattsville v. United States Gypsum Co.*, 882 F.2d 862, 869 (4th Cir.) (holding that a fundamental guide to statutory construction is common sense), *cert. denied*, 493 U.S. 1070 (1989). The statutory mandate in section 242B(a)(1) that the OSC shall specify the consequences under subsection(c)(2), i.e., that notice of future hearings will be forfeited, means that it shall specify precisely those consequences. The OSC does not do so.

The language of a regulation must be consistent with the plain language of the statute, as a regulation which deviates from the unambiguously expressed intent of Congress is invalid. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra.* Although the language of the statute is clear and unequivocal, neither the OSC nor the regulations notify a respondent of the most critical, immediate consequence of his failure to provide address or telephone information as required. *See* 8 C.F.R. §§ 3.15, 3.26.[4] Neither the regulations nor the OSC notifies a respondent that if he does not provide an address, he will forfeit any notice of a future hearing, at which he shall be ordered deported in absentia. The OSC only notifies him that such an in absentia hearing may take place.

## III. DUE PROCESS: FUNDAMENTAL FAIRNESS AND SUBSTANTIAL JUSTICE

While acknowledging that the OSC contains no explicit notice of the consequences in subsection (c)(2) as mandated by the statute, the majority concludes that the respondent received the "statutorily required notice of his hearing," *Matter of Villalba*, 21 I&N Dec. 842, 843-44 (BIA 1997), i.e., no written notice. The majority contends, contrary to *Chevron*, that an approximate notice of what the statute requires pursuant to regulations which do not mirror the statute is acceptable. I find that it is not.

It is doubtful that such inexact compliance with the statute allows the conclusion that the respondent received a hearing consistent with the constitutional protections required in deportation proceedings. *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Bridges v. Wixon*, 326 U.S. 135, 154 (1945) (stating that deportation "visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. . . . Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness."); *Matter of G-*, 20 I&N Dec. 764, 780 (BIA 1993) (citing *Harisiades v. Shaughnessy,* 342 U.S. 580 (1952)); *Matter of Ching*, 12 I&N Dec. 710, 712 (BIA 1968) (citing *Wang Yang Sung v. McGrath,* 339 U.S. 33 (1950)).

---

[4] The regulations require that the OSC inform an alien that failure to advise the Immigration Court of a current address may result in an in absentia hearing, and that if an address was not provided when the OSC was served, or if it has changed, the correct address must be provided within 5 working days of issuance of the OSC or change of address. *See* 8 C.F.R. §§ 3.15(b)(7), 3.15(c).

## A. Legal Considerations

Administrative proceedings in which a respondent may be ordered deported from the United States involve the potential deprivation of a significant liberty interest and must be conducted according to the principles of fundamental fairness and substantial justice. *See Landon v. Plasencia*, 459 U.S. 21, 34-35 (1982). The content of the process due is determined on a case-by-case basis. See Matthews v. Eldridge, 424 U.S. 319, 335 (1976) (articulating a three-part test which weighs the individual interest involved, the risk of erroneous deprivation of that interest, and the government's interest, including the burden of adopting alternative means of carrying out the activity in question).

The statute provides that deportation shall be determined only on a record made in a proceeding "before a special inquiry officer" and that a respondent is to be provided a "reasonable opportunity to be present." Section 242(b) of the Act, 8 U.S.C. § 1252(b) (1994);[5] *see also Maldonado-Perez v. INS*, 865 F.2d 328, 333 (D.C. Cir. 1989) (holding that the Act implements constitutional requirements of a fair hearing); *Matter of Huete*, 20 I&N Dec. 250, 253 (BIA 1991) (holding that the respondent did not have a reasonable opportunity to be present where he was not properly served with the Order to Show Cause).

Paramount among the due process guarantees afforded a respondent is meaningful notice of, and the opportunity to be present at, one's deportation hearing. *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970) (holding that due process specifically requires that a person facing governmental deprivation of life, liberty, or property receive adequate notice and an effective opportunity to be heard);[6] Gomez, *The Consequences of Nonappearance: Interpreting New Section 242B of the Immigration and Nationality Act*, 30 San Diego L. Rev. 75, 107-08 (1993).

## B. Practical Considerations

The right to be present at one's deportation hearing arises not only from the statutory language and from due process considerations which involve issues of personal liberty.[7] It springs also from the expressed desire for reliability in deportation proceedings which often involve highly complex facts

---

[5] While section 242B of the Act contains specific provisions allowing an Immigration Judge to conduct a deportation proceeding in absentia, the "reasonable opportunity to be present" under section 242(b) continues in force.

[6] The specific statutory requirements of a fundamentally fair deportation hearing include the respondent's right to be notified of the charges against him, be provided the opportunity to obtain counsel at no expense to the government, be heard, be allowed to produce evidence and present and cross-examine witnesses, and be permitted to refute evidence against him. Sections 242(b), 242B of the Act; 8 C.F.R. § 242 (1996).

[7] The right to appear is an essential liberty interest that may attach in the civil context. *See, e.g., Califano v. Yamasaki*, 442 U.S. 682 (1979) (extending the right to an oral hearing to social security overpayment recoupment proceedings); *Morrissey v. Brewer,* 408 U.S. 471 (1972)

regarding a respondent's attributes and activities, and require the respondent's testimony to properly adjudicate the case. *See, e.g., Purba v. INS*, 884 F.2d 516, 517-18 (9th Cir. 1989) (holding that the statutory language of section 242(b), combined with significance of credibility determinations in deportation matters, supports a bright line rule requiring physical presence before the Immigration Judge); *Akbarin v. INS,* 669 F.2d 839, 845 (1st Cir. 1982) (holding that fair hearing required that respondent be permitted to present oral testimony in proceedings before Immigration Judge).[8]

It is axiomatic that a respondent's opportunity to be present at his or her deportation hearing cannot be insured without proper notice. Notice comports with due process if it is of such a nature as to reasonably convey the necessary information. *Schneider v. County of San Diego*, 28 F.3d 89, 92 (9th Cir. 1994), *cert. denied*, 513 U.S. 1155 (1995). The information provided must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 13 (1978). Furthermore, the concept of due process is a flexible one, and notice must be "tailored to the capacities and circumstances" of the intended recipient. *Goldberg v. Kelly, supra*, at 268-69.

Under the present scheme, in order to avoid being ordered deported at a hearing conducted in his absence, the respondent must therefore make a succession of deductive leaps to understand the logical consequence of not having an address on file. They are, (1) if he cannot or does not provide an address, he will receive no further notice; (2) because he has not been informed of the time and date of his hearing initially, he will not know the appointed time for such proceeding; (3) because he doesn't know the time, it is unlikely he will arrange to be present; and (4) as he will not be present, he most likely will be ordered deported in absentia.

The majority would find this outcome unlikely because they view the regulations to "reasonably construe" the statute, meaning that since the OSC notifies the respondent that he will be deported in absentia if he fails to appear, the respondent should be able to put the pieces together. *Cf. Walters v. Reno,* No. C94-1204C (D. Wash. Oct. 2, 1996) (ruling that, although facially in compliance with the statute, the Service's standard procedures in

---

(applying the right to be present in a parole revocation hearing); *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (implying the right to be present in probation revocation proceedings); *Specht v. Patterson*, 386 U.S. 605 (1967) (holding that the right to be present exists in civil commitment proceedings); *cf. Hewitt v. Helms*, 459 U.S. 460 (1983) (holding that once imprisoned, a written statement generally is adequate to determine the propriety of an individual's administrative segregation).

[8] Furthermore, as the government bears the burden of proof in deportation proceedings, the government's interest is best served by a formal proceeding in which the respondent is present. *See, e.g., Matter of Guevara*, 20 I&N Dec. 238, 244-45 (BIA 1990) (holding that respondent's silence alone is insufficient to satisfy the Service's burden to establish deportability by clear, unequivocal, and convincing evidence); *see also* Gomez, *supra*, at 108.

civil document fraud cases violated due process by failing to provide adequate notice in understandable terms informing class members of their rights and the immigration consequences of section 274C charges); *see also Padilla-Agustin v. INS*, 21 F.3d 970 (9th Cir. 1994). The majority contends that despite the literal discrepancies and omissions in the OSC, it adequately apprised the respondent that he would forfeit receiving any further hearing notices. To the contrary, even a recitation of the exact statutory terms, which might seem straightforward to lawyers, congresspersons, and judges, might not suffice to adequately advise the respondent. Indeed, even the most educated or sophisticated "layperson" might find intimidating, equivocal, or incomprehensible language and terminology that legal professionals find "logical." *Walters v. Reno, supra.*

In sum, a respondent's liberty interest is substantial and is protected by due process. *Matthews v. Eldridge, supra*, at 335; *Bridges v. Wixon, supra; see also Orantes-Hernandez v. Meese*, 685 F. Supp. 1488, 1507 (C.D. Cal. 1988), *aff'd sub nom. Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990). When the right to receive meaningful notice and to be present at a hearing is violated and prejudices the respondent, an order emanating from such a hearing may not be upheld. *Matter of Santos*, 19 I&N Dec. 105, 107 (BIA 1984) (affirming the rule that a respondent must be prejudiced by a defect in the deportation proceeding before he will be found to have been denied due process). *See also Weidersperg v. INS*, 896 F.2d 1179, 1183 (9th Cir. 1990); *Mendez v. INS*, 563 F.2d 956, 958-59 (9th Cir. 1977) (holding that a deportation order obtained through an unconstitutional measure must be set aside).

## IV. LAWFUL AND REASONABLE APPLICATION OF IN ABSENTIA PROCEDURES

It is difficult to imagine what could be more prejudicial to a respondent charged with being deportable from the United States than denial of an opportunity to be present at his deportation hearing where he might provide any defenses to the charges against him, or advance any claims he may have for relief from deportation. Under the present procedure, an alien such as the respondent, who is the subject of a final order of deportation issued following a hearing conducted in absentia, in accordance with section 242B(c) of the Act, will face deportation without ever having received either notice of a scheduled hearing or a meaningful opportunity to appear before an Immigration Judge. We must consider whether, given the terms of the statute and the demands of constitutional due process, this harsh outcome is acceptable under the notice provided here.

## A. Inadequacy of Existing Procedural Scheme

### 1. Notice of the Respondent's Obligations
### in the Order to Show Cause

The respondent simply was not informed or otherwise advised by the written information on the OSC that failure to provide an address would result in no notification of a future hearing to determine his deportability—a hearing which could result in his deportation from the United States. As noted by the Immigration Judge in his decision, the OSC issued to the respondent does not make clear that, if no address is provided as required by the statute, the respondent may be subject to an order of deportation "and the otherwise stated requirements of notice of hearing are not applicable."

The respondent almost certainly is not familiar with the nuances of statutory interpretation or the complexities of immigration law, and there is no basis for us to assume otherwise. Therefore, he should not be expected to make the leap in reasoning which is necessitated by the majority's analysis. Specifically, it would be unreasonable for us to assume that the respondent appreciates that the information contained in the OSC, although not what is explicitly required by section 242B of the Act, is a "reasonable construction" of the statute that adequately conveys the intended message. To proceed in this fashion ignores, rather than accounts for, the capacities and circumstances of the respondent. *See Goldberg v. Kelly, supra.*

The majority's reliance on *El Rescate Legal Serv., Inc. v. EOIR*, 959 F.2d 742, 748 (9th Cir. 1991) (finding the statutory provision at issue stipulated that "[p]roceedings . . . shall be in accordance with such regulations . . . as the *Attorney General shall prescribe*") is misplaced. Section 242B of the Act contains no analogous language instructing the Attorney General to promulgate regulations which interpret the statutory requirements concerning what information must be provided in the Order to Show Cause. *See* Section 242B(a)(1) of the Act. Rather, Congress itself enacted explicit requirements to govern in absentia proceedings. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra.*

The required recitation of both the immediate and ultimate consequences of a respondent's failure to provide an address, as is required by section 242B(a)(1)(F)(iii) of the Act, could not be more plain. They include the consequence that no written notice will be provided, either of the date, time, or place of any subsequent hearing, and the consequence that failure to appear most likely will result in entry of an in absentia deportation order. Section 242B(c)(2) of the Act. Given the particularity of this statutory scheme, it defies common sense to conclude that Congress enacted the specific notice requirements set forth in section 242B of the Act without intending that the entire notice would be provided, or that it would be permissible to enter an in absentia order without adherence to the statutory notice language.

There is no reason to ignore these plain requirements in favor of less precise terms, which compromise both the explicit statutory language and the due process protections afforded a respondent in deportation proceedings. To the extent that information contained in the OSC differs meaningfully from that required by the statute, the language of the OSC impermissibly deviates from the requirements of the statute.[9] Unlike the majority, I regard the adjudication of convenience which would result were we to sustain the Service's appeal to be inadequate. *See Baires v. INS*, 856 F.2d 89, 91 (9th Cir. 1988) (holding that administrative expediency must give way to protection of fundamental rights).

### 2. Respondent's Obligation to Provide an Address After Issuance of an Order to Show Cause

The existing administrative scheme requires that, since the respondent did not provide an address when served with the OSC, he must provide his address to the Immigration Court within 5 days of the OSC's issuance.[10] 8 C.F.R. 3.15(c). The OSC contains an address, but no telephone number, for the Immigration Court located in Seattle, Washington, which the respondent could use for this purpose.

However, the Service did not file the OSC with the Immigration Court for 2 months after it was served on the respondent. There is no reason that the Immigration Court would open a "record of proceeding" file or place the matter on its docket until the Service files the OSC with the court, establishing jurisdiction, and there is no official or unofficial time limit or protocol which governs or characterizes Service practice as to the filing of the OSC in any given case. *See* 8 C.F.R. § 3.14(a). The OSC contains no information that would allow the respondent to contact the Service in the meantime.

Therefore, as a practical matter, assuming the respondent understood the notification provisions in the OSC, it was virtually impossible for the respondent to provide his address as required under the regulations with any certainty that it would be recorded or preserved. Had the respondent attempted

---

[9] The Illegal Immigration Responsibility and Immigrant Reform Act, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, (enacted Sept. 30, 1996)("IIRIRA"), *as amended by* Extension of Stay in the United States for Nurses Act, Pub. L. No. 104-302, 110 Stat. 3656 (1996), which is applicable only to proceedings first initiated after April 1, 1997, or in which the Attorney General elects to apply the relevant provisions of IIRIRA, continues to require that the notice to appear (formerly the Order to Show Cause) notify the respondent of the separate and distinguishable consequences, that failure to provide an address will result in forfeiture of future notice, *and* that proceedings for which notice was forfeited proceed in absentia. *See* section 239(a)(1) of the Act (to be codified at 8 U.S.C. § 1229); section 240(b)(5) of the Act (to be codified at 8 U.S.C. § 1229a(b)(5))).

[10] Despite its arguments on appeal, the Service conceded at the hearing that there was no evidence that the respondent had been "deliberately uncooperative" and the Immigration Judge concluded that he "simply did not apparently have an address when he was contacted by the border patrol." (Emphasis added.)

to provide his address to the Immigration Court in Seattle within 5 days of his receipt of the OSC, in compliance with 8 C.F.R. § 3.15(c)(1), his action would have been for naught because the Service had not yet caused proceedings to commence by filing the OSC with the Immigration Court.

In fact, during the 2 months between the time that the respondent was served with the charging document on August 5, 1994, and the time that it was filed with the Immigration Court on October 4, 1994, it is not apparent that the respondent had any means of reporting an address to either the Immigration Court or the Service, or to be proactive in pursuing information concerning his hearing date. We cannot even discern whether or not he attempted to contact the Immigration Court with the information.

Had the Service adopted a curative procedure of filing the OSC with the Immigration Court within 24 or 48 hours, or provided the respondent with some reasonable instruction concerning a mechanism to report a later-acquired address or change of address, it might ultimately have been recorded in the "record of proceedings" file established by the Immigration Court when the Service did file the OSC. Arguably, then, the respondent still might have complied with the requirement that he report his address within 5 days of issuance of the OSC. However, the Service did not do either.

Even setting aside the infirm and inadequate approximation of the statutory notice of consequences which the respondent received, the respondent was effectively precluded from complying with the established procedure by the gap between service of the OSC and assumption of jurisdiction by the Immigration Court. These practical impediments impermissibly prejudiced his right to receive notice and to be present at his deportation hearing. *Matter of Santos, supra.*

### 3. Certificate of Service Notifying Respondent of Commencement of Proceedings

Under 8 C.F.R. § 3.14, at the time the Service files the OSC, "a certificate of service that indicates the Immigration Court in which the charging document is filed must be served upon the opposing party pursuant to 8 CFR 3.32." The record contains no evidence that such a certificate of service was issued to the respondent. Unless the Service has elicited an address, or offered an alternative means of notification, the agency cannot possibly comply with this provision of the regulations under circumstances such as those presented in this case.

In *Matter of Garcia-Flores*, 17 I&N Dec. 325, 327 (BIA 1980), we considered the precept that an agency must scrupulously observe rules, regulations and procedures that it has established, and that if it fails to do so, its action will not be sustained by the courts. We recognized that "the 'duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law.'" *Id.* at 328 (quoting *United States v. Caceres*, 440 U.S. 741, 749 (1979)); *see also Bridges v.*

*Wixon, supra*, at 152-53 (reaffirming the statement in *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 155 (1923), that one subject to deportation is legally entitled to insist upon the observance of rules promulgated by the Secretary of Labor pursuant to law).

Even if rules are not founded on a constitutional or statutory requirement, an agency still has a "duty to obey them." *United States v. Caceres, supra*, at 751 n.14. Although every regulatory violation need not result in the invalidation of all subsequent agency action, when the rights of individuals are affected, it is incumbent on agencies to follow their own procedures. *Morton v. Ruiz*, 415 U.S. 199, 235 (1974); *see also United States v. Calderon-Medina,* 591 F.2d 529 (9th Cir. 1979). An adjunct to the principle that a violation of due process which is prejudicial must result in invalidation of the proceeding, *Matter of Santos, supra*, is that failure to follow a regulation or procedure of benefit to the alien which is prejudicial requires the proceedings be invalidated as violative of due process. *See Matter of Garcia-Flores, supra; see also Hernandez-Luis v. INS*, 869 F.2d 496 (9th Cir. 1989) (finding that a violation which prejudices a protected interest renders the regulation unenforceable).

## B. Effect of Ninth Circuit Law

The United States Court of Appeals for the Ninth Circuit consistently has held that an agency's failure to provide clear administrative guidance, even when not explicitly specified by Congress (as is the case here), can result in the invalidation of its procedures. *See Shamsi v. INS*, 998 F.2d 761 (9th Cir. 1993) (ruling that alien's failure to timely file appeal excused owing to misleading form and conflicting regulations); *Vlaicu v. INS*, 998 F.2d 758 (9th Cir. 1993) (finding that ambiguous notice letter, coupled with conflicting regulations, misled aliens into believing their actions were adequate to constitute a timely appeal).

Therefore, even if my view that fundamental fairness and substantial justice require us to overturn an in absentia order in which it is not clear that the respondent had effective notice (that he will forfeit notice of his hearing if an address is not provided) were less than persuasive, the controlling law of this circuit calls into question the approximation urged by the Service, and adopted by the majority.[11] Specifically, relying on due process considerations, this circuit has been quite adamant, and I believe properly so, in insisting that aliens be provided meaningful notice of proceedings in which they are involved, and a meaningful opportunity to be heard. *See Padilla-Agustin v. INS, supra*, at 974-75 (holding that alien was denied due process where he

---

[11] The Board is bound to follow the law of the United States Court of Appeals for the Ninth Circuit, in which this case arises. *See Matter of Anselmo*, 20 I&N Dec. 25, 31-32 (BIA 1989); *Matter of K-S-*, 20 I&N Dec. 715, 719-20 (BIA 1993); *see also NLRB v. Ashkenazy Prop. Mgmt. Corp.*, 817 F.2d 74 (9th Cir. 1987).

received inadequate notice of potential for summary dismissal and unclear instructions on appeal notice forms). In *Padilla-Agustin v. INS, supra*, invoking the principles set forth in *Mathews v. Eldridge*, the court determined that the confusing nature of the forms provided by the Board of Immigration Appeals, the strict notice of appeal requirements enforced by the Board, and the failure to provide advance warning before summarily dismissing an appeal, deprived the alien of due process. *Padilla Agustin v. INS, supra*, at 977; *see also Walters v. Reno, supra*.

In addition, the court rejected a deportation order where it found that the government's established procedure for filing notices of appeal resulted in "uncertainty and arbitrary results," particularly for petitioners who resided in remote areas and were required to submit documents to the Immigration Court through the mail. *Gonzalez-Julio v. INS*, 34 F.3d 820, 825 (9th Cir. 1994). The court found that "the risk of erroneous deprivation of the petitioner's interest in filing an appeal is substantial," and determined that the government had failed to adequately demonstrate its interest in preserving the existing procedures. *Id*. Furthermore, in a recent holding, the Ninth Circuit noted that where the Service had not filed a brief arguing for summary dismissal of the respondent's appeal based on insufficient specificity, the respondent did not receive adequate notice that his appeal could be summarily dismissed by the Board. *Castillo-Manzanares v. INS*, 65 F.3d 793, 795-96 (9th Cir. 1995).

The Ninth Circuit has held that when a procedure involves the potential deprivation of a fundamental right, such as an alien's right to be notified of deportation proceedings, to exercise the right to appear and be afforded an opportunity to be heard, the procedure must err on the side of ensuring that an alien is provided the full process that he or she is due. *See United States v. Ortiz-Rivera,* 1 F.3d 763, 768 (9th Cir. 1993) (holding that a "mass silent waiver" cannot be a knowing and intelligent waiver of right to appeal, rendering deportation proceeding fundamentally unfair for depriving alien of constitutional right to direct judicial review); *see also United States v. Lopez-Vasquez*, 1 F.3d 751, 754, (9th Cir. 1993); *United States v. Gonzalez-Mendoza*, 985 F.2d 1014, 1017 (9th Cir. 1993); *Baires v. INS, supra*.

## C. Availability of Alternative Implementation

Although the Ninth Circuit has stated that an administrative procedure which has been adjudged constitutionally deficient can, in some instances, be remedied by the introduction of "a less misleading set of forms, regulations and rulings or a procedure," it appears that no such corrective procedure will be invoked here. Padilla-Agustin v. INS, supra, at 977. Despite one alternative proposed by the Immigration Judge that would partially cure the defects in notice, and several other creative and cost-effective options available to the Service which would render its practices consistent with due process,

none apparently has been seriously considered for implementation. *Cf. id.* (proposing alternatives such as "better forms, or better accompanying explanations" which "should certainly be easily attainable"); *see also Nazakat v. INS*, 981 F.2d 1146, 1148-49 (10th Cir. 1992) (holding that the Immigration Judge's provision of additional information explaining ambiguous appeal forms satisfied the specificity required for adequate notice of appeal).

In considering the government's interest in maintaining the present notice procedure, consideration must be given to the requirements of administering deportation proceedings. *See Gonzalez-Julio v. INS, supra*, at 824. Although facing formidable challenges, the Service has vast resources at its disposal, including substantial funding and an extensive workforce.

Furthermore, as the Supreme Court has insisted, for a notice procedure to comply with the demands of due process, it must be tailored to the capacities and circumstances of its intended recipient. *Goldberg v. Kelly, supra*, at 268-69. The respondent in this case is an unrepresented alien who was apprehended by the Service in a remote area of the country frequented by migrant laborers who perform seasonal agricultural work. He is a person of undetermined educational level, with uncertain multilingual abilities, without apparent financial resources or a fixed address, who most likely resides far from the Immigration Court in Seattle, Washington.

The Immigration Judge proposed an "easily attainable administrative alternative" which, he claims, avoids the ambiguity of the existing procedure. According to the Immigration Judge, "[t]he supplemental directive used by the Seattle District is intended and does fulfill the need to squarely communicate the need to give an address or that a deportation order may be entered," and provides an arguably reasonable basis for an order of deportation if such requirements are not met. However, it is important to recognize that although a supplemental notice would go some distance to at least advise the respondent of the literal consequences of his failure to comply with his obligation to provide the required address information, such a remedy is limited. It neither cures the potential impossibility of compliance with the 5-day address reporting rule under 8 C.F.R. § 3.15(c), nor ensures the Service's compliance with the certification requirements of 8 C.F.R. § 3.14, which mandate that notice be provided to the respondent that the OSC has been filed with the Immigration Court.

The Service has neither claimed nor demonstrated a legitimate interest in refusing to provide any supplemental directive or to adopt some other alternative remedial procedure that comports, literally, with the statutory requirements and enables compliance with the regulations as they now stand.[12] It is

---

[12] Furthermore, it is questionable whether any proposition would even garner consideration, as the Service steadfastly insists that the existing regulations satisfy the statutory requirements. *See* Service Brief at 11 ("The suggestion in the decision of the immigration judge that the current form of the Service's Order to Show Cause be changed . . . is not proper. The OSC in the instant case notified Appellee of the consequences of his failure to provide an address as required by the Act.").

for the government, specifically the Service, or perhaps the Immigration Court in cooperation with the Service, to implement fair and reasonable procedures that remedy these glaring administrative inadequacies in the address reporting procedure. *See Gonzalez-Julio v. INS, supra*, at 824 (holding that delays caused by the Immigration Court or the Board not within an alien's control should not provide a basis for dismissal of an appeal as untimely).

While I do not propose to dictate how the Service might facilitate the Attorney General's compliance with the statutory language or the constitutional requirements governing the right to meaningful notice and the right to appear, there is no paucity of methods to ensure the rights of a respondent in the situation presented here. At a minimum, a respondent should not be totally foreclosed from compliance by virtue of the agency's limitations.

The Service's job is to ensure that justice is done, not simply to generate greater numbers of deportation orders. *Matter of S-M-J-*, 21 I&N Dec. 722 (BIA 1997). Its denial of any fundamental defect in the present administrative scheme, and its refusal to implement any ameliorative procedure which would satisfy due process requirements, does not aid its legitimate cause of obtaining in absentia deportation orders in appropriate cases. In the absence of any demonstrable reason not to provide the respondent notice of all the consequences of failure to provide an address as required by the statute, or to facilitate the respondent's compliance with his obligation to provide address information, I cannot conclude that an in absentia deportation order would be appropriate or lawful.

## V. CONCLUSION

I interpret both the statutory language and due process guarantees applicable to deportation proceedings to mean that the OSC must provide meaningful, comprehensible notice of the consequences of failing to comply with the demands of the statute. I read this standard to require, further, that the respondent be afforded a reasonable and meaningful opportunity to comply with the requirements of the statute, as expressed and implemented through regulation. A flawed process, as exists here, prejudices the respondent, compromising his interest both in being present at his deportation proceedings and being in a position to answer the charges lodged against him. Consequently, I conclude that any deportation order issued under these circumstances would be invalid, and I would uphold the order of the Immigration Judge terminating the proceedings.